The **KANSAS CITY SOUTHERN RAILWAY COMPANY**, Louisiana & Arkansas Railway Company, the Arkansas Western Railway Company, and Fort Smith and Van Buren Railway Company, Plaintiffs,

v.

**UNITED STATES** of America and Interstate Commerce Commission, Defendants,

The Texas and Pacific Railway Company, Missouri Pacific Railroad Company, and the Atchison, Topeka and Santa Fe Railway Company, Intervenors.

Civ. No. 15159–3.

United States District Court
W. D. Missouri, W. D.
July 29, 1968.

William E. Davis, Robert E. Zimmerman, R. W. Spachman, Fred R. Birkholz, Kansas City, Mo., for plaintiffs.

Donald F. Turner, Asst. Atty. Gen., John H. D. Wigger, Justice Dept., and F. Russell Millin, U. S. Atty., Kansas City, Mo., for defendant United States.

Robert W. Ginnane and Raymond M. Zimmet, Washington, D. C., for defendant Interstate Commerce Commission.

Mark M. Hennelly; Wm. McDowell, Jr., and Gilbert P. Strelinger, St. Louis, Mo., Johnson, Lucas, Bush & Snapp, Kansas City, Mo., for intervenors The Texas & P. Ry. Co. and Missouri Pac. Ry. Co.

S. R. Brittingham, Jr., Harvey Huston and Starr Thomas, Chicago, Ill., Sam D. Parker and Lathrop, Righter, Gordon & Parker, Kansas City, Mo., for intervenor The Atchison, T. & S. F. Ry. Co.

MEMORANDUM OPINION AND ORDER AFFIRMING FINDINGS OF INTERSTATE COMMERCE COMMISSION

Before GIBSON, Circuit Judge, OLIVER, District Judge, and DUNCAN, Senior District Judge.

DUNCAN, Senior District Judge.

This is an action under 5 U.S.C. § 1009, 28 U.S.C. §§ 1336, 1398, 2284 and 2321–2325 and 49 U.S.C. § 17(9) to review, enjoin, annul, set aside and suspend a report and order of the Interstate Commerce Commission (called the "Commission" herein).

The Complaint requests, in addition to a permanent injunction, a restraining order to stay the consummation of the transactions which were approved by the Commission. That request was denied on September 4, 1964 because plaintiffs failed to show that specific irreparable damage would result if the restraining order were not granted. Thereafter, on September 25, 1964, acquisitions approved by the Commission were carried out.

Plaintiffs are attacking the actions of the Commission in Texas & Pac. Ry. Co.—Control—Kansas, O. & G. Ry. Co., 324 I.C.C. 309 (1964),[1] permitting the Texas and Pacific Railway Company (and through it, the Missouri Pacific Railroad Company) to acquire control of the Kansas, Oklahoma & Gulf Railway Company, the Midland Valley Railroad Company and the Oklahoma City-Ada-Atoka Railway Company and further approving the resale of the latter railroad to the Atchison, Topeka and Santa Fe Railway Company. The acquiring railroads filed their applications in 1962. The Kansas City Southern Railway Company and its subsidiaries,[2] plaintiffs herein, intervened and presented testimony opposing the applications at the extensive public hearings which were held by the Hearing Examiner. Plaintiffs herein filed exceptions to the Hearing Examiner's report, which recommended approval of the control transactions subject to certain conditions for the protection of other railroads.

The Commission concluded that the recommended conditions were adequate and approved the proposed stock acquisitions in terms substantially similar to those contained in the report and order of the Hearing Examiner. Within ninety

1. Finance Docket No. 22274. The report also embraces Finance Docket No. 22275, Texas & Pac. Ry. Co.—Note and Finance Docket No. 22382, Atchison, Topeka & Santa Fe Ry. Co.—Control—Oklahoma City-Ada-Atoka Ry. Co.

2. Louisiana & Arkansas Railway Company, the Arkansas Western Railway Company, and the Fort Smith and Van Buren Railway Company, collectively referred to by the Commission as the Kansas City Southern Lines.

days after the Commission's decision, plaintiffs filed this action. For convenience, the abbreviations used by the Commission will be adopted in this opinion. Plaintiffs will be referred to as KCS; Texas and Pacific Railway Company and Missouri Pacific Railroad Company will be referred to, respectively, as T&P and Mo-Pac.

KCS does not attack the acquisition transactions in this case, but rather the conditions on which the transactions have been permitted. KCS is especially concerned with the effect the transactions will have on its rail route from Kansas City, Missouri, to Dallas, Texas. KCS, along with several other railroad companies,[3] maintains train service between Kansas City and Dallas. Prior to the transactions in question, KCS and Mo-Pac had competing routes to Dallas both of which interchanged with the lines of T&P at Texarkana, Arkansas/Texas. T&P is controlled by Mo-Pac, which owns a majority of the former's capital stock. KCS's route through Texarkana was considerably shorter than Mo-Pac's.

By acquiring control of the Kansas, Oklahoma & Gulf Railway through the T&P, Mo-Pac would gain a much more direct and considerably shorter route from Kansas City to Dallas, eliminating some 319 miles by avoiding a loop through Arkansas. The new Mo-Pac route would be, in fact, even shorter than the KCS route, and KCS feared the new route would become dominant, resulting in substantial diversion of traffic and revenue from the KCS routes. KCS intervened before the Commission, seeking protection against the possibility that Mo-Pac might close the routes to Dallas through Texarkana, which were essential to KCS's route from Kansas City to Dallas, by cancelling the routes or closing them commercially through rate reductions over all the Mo-Pac routes or by impairment of service or interchange.

KCS sought to preclude such possibilities by imposing on the parties to the proposed transactions a condition[4] "which would tend to establish permanently existing joint routes and rates with [T&P's and Mo-Pac's] lines, and fixed divisions of revenues from such joint rates." The condition proposed by KCS was not recommended by the Hearing Examiner nor adopted by the Commission. Instead, the Commission imposed on the acquiring railroads seven conditions, contained in Appendix II to the Commission's report, which are known as the "standard" conditions.[5]

The competing lines include the Missouri Pacific Railroad Company, the Chicago, Rock Island and Pacific Railroad Company, the St. Louis-San Francisco Railway Company, the Missouri-Kansas-Texas Railroad Company and the Atchison, Topeka and Santa Fe Railway Company.

Applicants, and each of them, and the respective railroads control of which applicants seek to acquire in these proceedings, shall maintain, preserve and keep open existing joint routes and channels of trade and commerce in connection with the Kansas City Southern Railway Company and its subsidiaries, or any of them, via all existing gateways and junctions and hereafter maintain joint rates thereover on a competitive basis, without discrimination in service on traffic moving under such rates and also without unreasonable or discriminatory increases in the bases of divisions of said joint rates.

Texas & Pac. Ry. Co.—Control—Kansas, O. & G. Ry. Co., 324 I.C.C. 309, 317, n. 6 (1964).

The seven conditions, in the form used in the Commission's report and order, are as follows:

1. All routes and channels of trade of the KO&G, MV, and OCAA via existing junctions and gateways shall be maintained and kept open unless and until otherwise authorized by the Commission.

2. Neutrality of handling inbound and outbound traffic shall be continued by KO&G, MV, and OCAA to permit equal opportunities for service to and from all lines reaching the rails of KO&G, MV, and OCAA without discrimination as to routing or movement of traffic, and without discrimination in the arrangement of schedules, or otherwise.

3. Traffic and operating relationships existing between KO&G, MV, and OCAA, on the one hand, and, on the other, all

The first five conditions govern relations between the acquired lines and other carriers and shippers. The last condition is a reservation of jurisdiction by the Commission to modify the conditions if need arises. Condition six alone governs the maintenance of the acquirers' routes with relation to other railroads. KCS maintains that this condition is inadequate protection against the possible effects of the control acquisition.

■ The Complaint in this case alleges ten grounds for setting aside the Commission's order. However, as only one of these grounds was briefed by counsel for plaintiffs, the rest must be deemed abandoned. Riss & Co. v. United States, 96 F.Supp. 452, 454 (W.D. Mo.1950), rev'd on other grounds, 341 U. S. 907, 71 S.Ct. 620, 95 L.Ed. 1345 (1951).

Plaintiffs' remaining allegation is that the condition is inadequate because it is so imprecise and ambiguous that effective enforcement and protection of competition is precluded. The question presented, then, is whether the language of the condition has a sufficiently definite and precise meaning to permit effective enforcement of the Commission's intentions with respect to the acquisition transactions. The question can be answered without resort to the record of the hearings, since plaintiffs do not attack the sufficiency of the evidence upon which the Commission found that

the conditions imposed were adequate to protect plaintiffs and "other competing carriers."

■ The Commission's conclusion regarding the adequacy of those conditions must be upheld by this court if it is supported by substantial evidence and if it is consistent with applicable law.

"The function of the reviewing court * * * is limited to ascertaining whether there is warrant in the law and the facts for what the Commission has done. Unless in some specific respect there has been prejudicial departure from requirements of the law or abuse of the Commission's discretion, the reviewing court is without authority to intervene. It cannot substitute its own view concerning what should be done, whether with reference to competitive considerations or others, for the Commission's judgment upon matters committed to its determination, if that has support in the record and applicable law." United States v. Pierce Auto Freight Lines, Inc., 327 U.S. 515, 536, 66 S.Ct. 687, 698, 90 L.Ed. 821 (1946).

■ Plaintiffs specifically object to the phrases "closing any existing route" and "on account of their control", asserting that these phrases are ambiguous and imprecise. Plaintiffs point out that these phrases were not "defined" in the proceeding, nor have

lines connecting with their tracks shall be continued insofar as such matters are within the control of Mo-Pac and T&P.

4. KO&G, MV, and OCAA shall accept, handle and deliver all cars, inbound and outbound, loaded and empty, without discrimination in promptness or frequency of service, as between cars destined to or received from competing carriers and irrespective of origin, destination, or routes of movement.

5. Applicants shall not do anything to restrain or curtail the right of industries located on the KO&G, MV, or OCAA to route traffic over any or all existing routes and gateways.

6. Applicants shall refrain from closing any existing route or channel of trade

with any carrier on account of their control of KO&G, MV, and OCAA.

7. Any party or person having an interest in the subject matter may at any future time make application for such modification of the conditions imposed by the Interstate Commerce Commission that they may consider justifiable.

These are the so-called TP&W conditions, based on the seven conditions which were imposed by the Commission in Toledo, Peoria & Western R. Co. Control, 295 I.C.C. 523, 541–542 (1957), and are identical to the conditions imposed in Detroit, Toledo & Ironton R. Co. Control, 275 I.C.C. 455, 492 (1950) as to conditions one through five and condition seven. TP&W condition six was original with that case.

they or the condition in question ever been the subject of an opinion of the Commission. However, these facts do not in themselves render the language ambiguous and imprecise if the Commission's meaning is otherwise ascertainable.

Plaintiffs have set forth several situations in which they suggest that the meaning and application of the condition might be arguable. In answer, it must be said that language is not ambiguous merely because its applicability is arguable. The language used in the condition is straightforward and simple. Furthermore, other opinions of the Commission indicate clearly the meaning of the phrases as used in condition six.

 The phrase forbidding "closing of any existing route" obviously forbids the physical closing of a route. However, the same language also forbids the *commercial* closing of any route. This conclusion is required by opinions of the Commission construing the first five standard conditions, particularly condition one, which requires that existing routes of acquired lines "be maintained and kept open" unless authority to do otherwise is granted by the Commission. In several opinions on the effect of the conditions, the Commission has, in effect, found that requiring a route to be kept open is the same thing as forbidding its closing, whether physically or commercially. Rates, Various Commodities—Canada, Midwest and East, 318 I. C.C. 522 (1962); Rates, TOFC, Between Midwest and South—Louisville & N. R., 318 I.C.C. 40 (1962); and Enforcement of Conditions in Merger Proceedings, 313 I.C.C. 191 (1961). Those cases make plain the meaning of "closing" as used by the Commission.

For example, in Enforcement of Conditions in Merger Proceeding, supra, an action against an acquiring railroad to enforce conditions of the merger (including standard condition one), the railroad's defense that no routes or rates had been cancelled was not accepted by the Commission, which held (pp. 193–94) that:

> "[B]ecause no traffic has moved over the petitioner's route since the establishment of reduced rates over competitive routes, * * * (petitioners' routes) are for all practical purposes commercially closed."

> \* \* \* \* \* \*

> "The merger conditions, above set forth, require that the L.&N. keep open 'all routes and channels of trade via existing junctions and gateways, unless otherwise authorized by us,' and 'shall not do anything to restrain or curtail the right of industries now located on (competitive lines) to route traffic over any or all existing routes and gateways. (Sic) The language is plain; it means that the L.&N. is foreclosed from doing anything which will have the effect of closing, commercially or otherwise, any of the routes which existed at the time of the merger, without our authorization."

Discussing the effect of the standard conditions in Rates, Various Commodities—Canada, Midwest and East, supra, the Commission concluded (pp. 525–26) that:

> "[U]nder the merger conditions, the Soo Line is foreclosed from doing anything which will have the effect of closing, commercially or otherwise, any of the routes which existed at the time of the merger, without our authorization. * * * We find that the failure of the Soo Line to join in publishing the reduced rates in effect over routes in connection with certain connecting railroads * * * has the effect of commercially closing those routes in violation of the above-mentioned conditions * * *."

It can be seen from the foregoing that the Commission's plain intent in the standard conditions is to provide reasonable protection to existing channels of commerce in any merger or control proceeding. The Commission is concerned with substance, not with form, and has found a "closing" whenever one line has

made another's route commercially unattractive. It is clear that the Commission will consider anything which effectively stops traffic on a line to be, in effect, a closing. Thus, the words "closing any existing route" are sufficiently definite and unambiguous to be enforceable.

The phrase "on account of their control" presents a different problem, since neither that phrase nor any similar phrase has been construed by the Commission. However, the meaning of the phrase is sufficiently plain on its face that a prior opinion of the Commission is not required in order to ascertain what the words mean. The phrase in question is a limitation on the prohibition, stated in absolute terms, against closing any existing route. The Commission is not forbidding the closing of all routes for all reasons, but only forbidding the acquiring railroads (including T&P and Mo-Pac) from closing routes on account of their control of the short line railroads (which provide the most direct route from Kansas City to Dallas). The condition prohibits Mo-Pac and T&P from closing the routes from Texarkana to Dallas on account of the dominant position they have obtained by virtue of their new route to Dallas. The condition, as limited, would not prohibit Mo-Pac from closing routes which have no reasonable connection, geographically or competitively, with the newly acquired routes. To use the example cited by Mo-Pac and T&P in their brief, if Mo-Pac desired to close one of its routes from Pueblo, Colorado, to St. Louis, Missouri, the condition would not apply, since this route has no logical connection with the newly acquired short lines in Oklahoma and could not, therefore, be a closing "on account of" control of those lines.

Plaintiffs urge that the acquiring railroads might close down the Texarkana-Dallas routes for reasons which arguably would not be "on account of their control" of the new lines and that plaintiffs would be prejudiced thereby. However, that is the whole point of the

condition: to permit the acquiring railroads to function economically with respect to routes and rates but to prevent them from taking unfair advantage of the improved position which results from the control or acquisition. Clearly, if Mo-Pac and T&P had a reason to close the Texarkana-Dallas routes not connected with the acquisition, the condition would not prohibit it. As the Commission notes in its brief (filed jointly with the defendant United States of America):

"[I]t should be made clear that the Commission is not required to insulate carriers from every possible competitive consequence of a Section 5(2) transaction. A proposed transaction, otherwise consistent with the public interest, will be approved when, as conditioned, it will not result in diversion of an undue amount of traffic from competing rail lines.

See Missouri Pac. R. Co.—Control—Chicago & E. I. Co. Merger, 327 I.C.C. 279, 294 (1965), sustained sub nom. Illinois Cent. R. R. v. United States, 263 F.Supp. 421, 435 (N.D.Ill.1966), aff'd per curiam, 385 U.S. 457, 87 S. Ct. 255, 17 L.Ed.2d 162 (1967) * * *."

In a merger proceeding between the Erie and Lackawanna Railroads, one of the protestants requested, in addition to the standard conditions, provisions for the maintenance of service and schedules as they existed prior to the merger. The Commission ruled out any such provisions.

"In connection with transactions such as this, it is not practicable, nor would it be in the public interest, to impose conditions calculated to freeze the flow of traffic into a preexisting pattern or to protect competing and connecting carriers against all possible adverse effects which might follow from the unification and resulting improvements in service by the surviving corporation. Such action would prevent, to a substantial extent, the effectuation of service improvements to which the shipping public is enti-

tled, and would unduly restrict the unified company in its solicitation and routing of traffic and the development of a strong competitive system. Particularly upon consideration of the financial condition and strength of the participants in the proposed merger, relative to the interveners generally, we find no justification for more restrictive conditions than those recommended by the examiner."

Erie R. Co. Merger, 312 I.C.C. 185, 191 (1960).

█ Plaintiffs seem to contend, in a roundabout manner, that the condition imposed by the Commission is ambiguous and imprecise *because* it is not the condition which was proposed by plaintiffs and which was rejected by the Hearing Examiner and the Commission. However, plaintiff has not raised the question of whether or not the Commission should have imposed the stricter condition, and apparently did not meet the question with sufficient evidence to satisfy the Commission.

"[T]he evidence of KCS is devoid of any compelling circumstances to warrant the additional conditions it seeks. This protestant did not undertake to show in the record the total volume of traffic moving over its open routes with applicants, or to analyze such traffic in such a way as to show what part of it would be vulnerable to diversion. Even as to the traffic shown as interchanged at Texarkana, there was a failure to explain what part could be diverted, and how. General apprehensions of traffic diversion, closing or cancellation of routes, or other contingencies are without probative effect unless supported by reasonable factual basis or data. The evidence is conjectural in nature and, therefore, not persuasive. It is patently insufficient to sustain KCS's position. We conclude that the traffic conditions set forth in appendix II of this report are adequate and furnish

an effective means of safeguarding the interests of KCS and other competing carriers." Texas & Pac. Ry. Co. —Control—Kansas, O.&G. Ry. Co., supra, at 321.

Plaintiffs cannot relitigate that issue under the guise of ambiguity in the language of the condition which *was* imposed.

Of no little importance in weighing plaintiffs' complaint is condition seven, in which the Commission reserved jurisdiction to modify any of the conditions upon request by a party.

We note that in the period following the control acquisitions, something over three years, plaintiffs have not had occasion to return to the Commission to seek modification of condition six on account of damage sustained because of its ambiguity and imprecision. Notwithstanding the affidavit of plaintiffs' freight traffic manager (appended to plaintiffs' reply brief) wherein he sets out "four known instances" of conduct by Mo-Pac and T&P which allegedly violates the conditions, none of the consequences apprehended by plaintiffs have followed the acquisition transactions in question. In fact, two of the alleged violations were voluntarily "corrected" by the supposed offenders, while the other alleged violations have continued without corrective action by plaintiffs, one violation since January 19, 1967, the other since March 22, 1967. That plaintiffs have been able to withstand without action the effects of these violations seems to confirm the Commission's finding that:

"[T]he KCS is a financially stable carrier and ranks among the leading railroads in the country in this respect. * * * It * * * maintains a competitive position among the carriers operating in the area."

That competitive position has not, apparently, been impaired by the Commission's failure to impose the strict condition requested by plaintiffs.

Since the condition imposed by the Commission is sufficiently precise and unambiguous to permit enforcement of the Commission's intentions,[6] the report and order of the Commission must be sustained.

6. The conditions * * * specifically prohibit T&P and Mo-Pac from closing their routes with KCS on account of their control of the KO&G lines. Otherwise, [they] are designed to maintain and keep open all routes and channels of trade via existing junctions and gateways, to preserve neutrality of handling traffic without discrimination, to protect traffic and operating relationships, to preserve the routing rights of shippers, and to keep open to all parties the right to return to this Commission for such modifications as may be required in the public interest. Texas & Pac. Ry. Co., supra note 4, at 321–22.