**The KANSAS CITY SOUTHERN RAILWAY COMPANY et al., Plaintiffs,**

**v.**

**UNITED STATES of America and Interstate Commerce Commission, Defendants,**

**Illinois Central Industries, Inc., et al., Defendants-Intervenors.**

**Civ. A. No. 20177–2.**

United States District Court,
W. D. Missouri, W. D.

Aug. 9, 1972.

Robert E. Zimmerman, Gen. Counsel, Phillip S. Brown, Asst. Gen. Counsel, and Robert K. Dreiling, Kansas City Southern Lines, Kansas City, Mo., and J. Raymond Clark, Emphraim & Clark, Washington, D. C., for plaintiffs.

Bert C. Hurn, U. S. Atty. W. D. Mo., John H. D. Wigger, Dept. of Justice, Fritz R. Kahn, Gen. Counsel, Interstate Commerce Commission, Washington, D. C., for defendants.

Morrison, Hecker, Cozad, Morrison & Curtis, Robert L. Hecker and William H. Curtis, Kansas City, Mo., Robert Mitten, Howard D. Koontz, John D. Morrison, Illinois Central Railroad Co., Chicago, Ill., James N. Odgen and John W. Adams, Mobile, Ala., for defendants-interveners.

Before MATTHES, Circuit Judge, and WANGELIN and COLLINSON, District Judges.

COLLINSON, District Judge.

This is an action brought under the provisions of Sections 2321–2325 of Title 28 of the United States Code to suspend, enjoin, annul and set aside an order of the Interstate Commerce Commission which approved a merger of the Illinois Central and Gulf, Mobile and Ohio railroads. The Commission's report and orders are reported in Illinois Cent. Gulf R.–Acquisition–GM&O, et al., 388 I.C.C. 805.[1]

Plaintiffs are railroads commonly owned and jointly operated as Kansas City Southern Lines, and referred to as KCS. The Illinois Central, GM&O, and Illinois Central Industries, Inc. (which will control the merged companies) were permitted to intervene as defendants.

In the proceedings before the Commission the plaintiffs sought a proposed condition to the merger requiring the GM&O to sell to plaintiffs its line between Kansas City, Missouri and Bloomington, Illinois, and between Rodehouse, Illinois and Godfrey, Illinois, with a grant of trackage rights from Godfrey, Illinois to East St. Louis, Illinois, and from Bloomington, Illinois to Chicago, Illinois. The proposed condition would also require the merged company to sell to plaintiffs the Glenn Yard in Chicago and the Venice Yard in East St. Louis.

Plaintiffs seek to enjoin and annul the merger solely because these proposed conditions were disallowed in their entirety by the Commission.

The principal operations of the two merged lines are from Chicago to New Orleans through Illinois, Kentucky, Tennessee, Mississippi, and Louisiana.

KCS's northern terminus in Kansas City and its operation is from that important "gateway" to New Orleans and Port Arthur, serving western Missouri, eastern Oklahoma, western Arkansas, Louisiana, and a small portion of eastern Texas.[2] At the present time its principal competitor is the Missouri Pacific. It has a present strong financial position, and is a well managed operation.

The Commission found that the merger would divert approximately $210,000 a year gross traffic revenue from KCS (less than 3/10 of 1% of its present gross annual revenues of $79,000,000), and that such losses would "not impair its present strong position or otherwise endanger its operation." KCS does not challenge these findings, but takes the position (as we understand the briefs and argument) that the Commission should have determined its proposed acquisition solely on the grounds of "public interest" and not upon the question as to whether the acquisition was necessary to protect KCS from diversion of an undue amount of traffic as a result of the merger.

The record establishes that the proposed acquisition by KCS would increase the mileage of the KCS by almost one-third, and give it direct service to two important gateways, Chicago and East St. Louis, which it had not had previously. By its own estimate such an acquisition would increase gross revenues of

---

1. See the opinion in Missouri Pacific R.R. Co. v. United States, 346 F.Supp. 1193 (E.D.Mo., 1972), filed this same date, for a complete analysis of the proposed merger and the proceedings before the Commission.

2. A map showing the relationship between plaintiffs' lines and those of the proposed merged system is appended hereto.

KCS by eleven and a half million dollars, all diverted from other railroads, and almost half of which would be diverted from the merged company. The intervenors claim that the diversion from the merged companies alone would exceed thirteen million dollars annually. It is entirely understandable that the MKT, Frisco, and C&NW railroads, as well as intervenors, opposed the proposed acquisition by KCS.

The applicable law applicable to mergers is Section 5(2) (b) of the Interstate Commerce Act [49 U.S.C. § 5(2) (b)], which states:

"If the Commission finds that, subject to such terms and conditions and such modifications as it shall find to be just and reasonable, the proposed transaction (a merger) is within the scope of subdivision (a) of this paragraph and will be consistent with the public interest, it shall enter an order approving and authorizing such transaction, upon the terms and conditions, and with the modifications, so found to be just and reasonable."

The Commission found, first, that the proposed acquisition was not related to the merger and had nothing to do with balancing competition. The Commission further stated that:

"Under section 5(2) we have broad discretionary powers to subject a proposed merger to such terms, conditions, and modifications as we find to be just and reasonable. To be just and reasonable, the conditions must be related to the proposed merger."

and then made the following findings:

"There are numerous reasons why the relief requested by KCS should not be granted. The grant of the requested conditions would dilute the economic benefits of the proposed merger and produce benefits for KCS far in excess of any harm KCS would suffer as a result of the merger. Were KCS's conditions to be approved, its own figures show that Gulf and Central would lose approximately $5 million in revenues annually. Assum-

ing, *arguendo*, that the KCS figure is accurate, it is nevertheless our opinion that a grant of its conditions would nullify the merger benefits expected herein and defeat a major objective of the merger. Moreover, KCS's gain from the requested condition would be far in excess of any diversionary loss it may suffer from the merger. This is true even if we accept KCS's estimated diversionary loss of $1,491,000. As we have indicated, KCS's requested relief would result in a windfall to KCS to the detriment of the merged company and other railroads. It is our view that the purpose of the proposed condition is not to preserve the competitive *status quo* of KCS but rather to enrich it at the applicants' expense. In effect, the proposed conditions bear no real relationship to the proposed merger."

and

"We have declined to grant the relief requested by KCS for the reasons that its proposed operations would invade the territory of the merged company—a territory heretofore not served by KCS—and would result in a windfall to KCS far and above any traffic losses it may suffer from the merger. In this light, KCS's request for relief is not for the purpose of protecting its existing traffic but rather it is to acquire substantial volumes of new traffic primarily at the expense of the applicants. We conclude that its request is not related to the merger."

The Commission further found:

"We cannot accept the argument that imposition of KCS's requested conditions will result in more balanced competition. At present Gulf has one direct connection with KCS at Kansas City, Mo., and an indirect connection with KCS at New Orleans, Central has six connections with KCS, all in Louisiana. Mopac is KCS's principal railroad competitor and there is no indication that KCS's relative competitive position will change as a result of

the proposed merger. After the merger, approximately the same number of railroads will operate between key cities (New Orleans, Kansas City, St. Louis, and Chicago) as operate presently. Thus, the competitive situation in these areas would only be slightly changed after the merger.

"KCS relies upon our decision in Great Northern Pac. & B. Lines, Merger—Great Northern, 331 ICC 228, 280–281, as authority for the proposition that we have power to improve the position of an affected carrier in order to achieve more balanced competition. The *Northern Lines* decision is not controlling here for, as we have pointed out, KCS's requested conditions will not produce more balanced competition. As indicated hereinbefore, the effect of KCS's proposed conditions would be to eliminate the merged company between Kansas City and St. Louis and between Kansas City and Chicago and substitute KCS in lieu of the merged company. What KCS proposes is merely the substitution of one carrier for another and has nothing to do with balancing competition. The *Northern Lines* decision does not support KCS's argument."

The Commission, of course, in approving the merger found that it was "consistent with the public interest" for a number of reasons, which are rot challenged. Plaintiffs contend, however, the same tests should be applied to their proposed acquisition as if they were a merger applicant. The Commission held, however, that the test to be applied to the proposal of KCS was whether there was a *public need* for the proposal, stating:

"The grant of KCS's condition would enable KCS to expand its own areas of operations at the expense of the merging applicants. To permit KCS to invade the territory of the merged company—a territory never before served by KCS and now adequately served by one of the carriers to the proposed merger—would not be justified in the absence of a public

need for KCS's service. The burden of proving that there is a public need for KCS's service rests upon it. See *Detroit, T. & I. R. Co., supra*. While six shipper witnesses supported KCS's requests, that support is not a sufficient basis upon which to make a finding that the proposed operations of KCS are in the public interest. There has been no showing of public need for KCS's proposed service and in the light of existing competitive rail service in the area of the proposed operations, there is no basis for changing the competitive balance in the area. KCS's requests are denied."

In a petition for reconsideration filed with the Commission, and in the briefs filed in this Court, plaintiffs urged that if their proposed acquisition was denied, KCS should be granted trackage rights over the merged company's lines from Kansas City to Chicago and from Kansas City to St. Louis. This alternate condition was first proposed in the petition for reconsideration. Intervenors' brief points out that there are presently eight railroads operating between Kansas City and Chicago, and seven operating between Kansas City and St. Louis.

The scope of review by this Court of an order of this nature is well settled. In Kansas City Southern Railway Company v. United States, 288 F.Supp. 742 (W.D.Mo.1968), the court said:

"The function of the reviewing court * * * is limited to ascertaining whether there is warrant in the law and the facts for what the Commission has done. Unless in some specific respect there has been prejudicial departure from requirements of the law or abuse of the Commission's discretion, the reviewing court is without authority to intervene. It cannot substitute its own view concerning what should be done, whether with reference to competitive considerations or others, for the Commission's judgment upon matters committed to its determination, if that has support in the record and applicable law." United States v. Pierce Auto

Freight Lines, Inc., 327 U.S. 515, 536, 66 S.Ct. 687, 698, 90 L.Ed. 821 (1946).

■ This Court holds that the application by the Commission of the test of "consistent with the public interest" to the proposed merger, and its use of the test of "required by the public interest" as to the proposed forced sale to KCS is a proper application of the law.

The Commission made the following findings of fact in support of its conclusion that the proposed acquisition were not "just and reasonable conditions" to attach to the merger:

1. The requested condition would nullify a major part of the merger benefits and dilute the economic benefits of the proposed merger.

2. The requested condition would permit KCS to invade the territory of the merged company and divert a large amount of its freight revenue.

3. The requested condition would result in a substantial diversion of revenue from railroads other than the merged company.

4. The merger would result in only an insignificant diversion of revenue from KCS.

5. The requested condition is not necessary to preserve the present competitive position of KCS.

6. The requested condition would have no effect in balancing competition.

7. The requested condition would result in a windfall to KCS at the expense of the merged company and other railroads.

8. KCS has failed to prove a public need for its proposed acquisition.

■ All of the above findings of fact are supported by the record in this case and the Court finds no error in the Commission's application of the law to these facts in its denial of the conditions requested by plaintiffs.

Finding no merit in the plaintiffs' position in this case, it is therefore

Ordered that the complaint of the plaintiffs be denied and that the report and order of the Commission be sustained. The temporary restraining order is ordered dissolved.

## APPENDIX