**SEABOARD COAST LINE RAILROAD COMPANY, Petitioner,**

v.

**UNITED STATES of America and Interstate Commerce Commission, Respondents.**

**LOUISVILLE AND NASHVILLE RAILROAD COMPANY, Petitioner,**

v.

**UNITED STATES of America and Interstate Commerce Commission, Respondents.**

Nos. 78–2009, 78–2115.

United States Court of Appeals, Fifth Circuit.

July 26, 1979.

Dennis G. Lyons, Leonard H. Becker, Washington, D. C., Harry McCall, Jr., New Orleans, La., Charles H. Cochran, Washington, D. C., for petitioners.

James H. Wilson, Jr., William C. Bowers, John H. Fleming, Atlanta, Ga., Peter S. Craig, Washington, D. ·C., for Southern Railway Co.

John J. Powers, III, Robert J. Wiggers, Attys., Dept. of Justice, Antitrust Division, Washington, D. C., Mark L. Evans, I.C.C., General Counsel, John J. McCarthy, Jr., Atty., Washington, D. C., for respondents.

Before THORNBERRY, CLARK and RONEY, Circuit Judges.

RONEY, Circuit Judge:

This case involves the review of an order of the Interstate Commerce Commission de-nying to Seaboard Coast Line Railroad Company (SCL) a proposed joint-line commodity rate for the hauling of industrial sand from Marston, North Carolina, to Wyoming, Illinois. Since the proposed tariff would exclude Southern Railway Company (Southern) from participation as a connecting carrier, the Commission held the tariff violated two conditions of the merger agreement under which SCL was formed, and § 3(4) of the Interstate Commerce Act, each of which was interpreted as protecting Southern from such exclusion. Under the narrow standard of review of such orders, we deny the petitions for review.

*Summary*

A shipper of industrial sand anticipated a new market for his product and requested that Seaboard Coast Line establish an economical rate for the movement of sand from Marston, North Carolina, to Wyoming, Illinois. Such movement would otherwise be covered by an existing class rate, under which this traffic had never moved. SCL proposed a long-haul rate that was roughly one-quarter less than the class rate. To assure that it would be economically feasible, SCL specified that the rate would apply only via routes involving SCL, its subsidiary Louisville and Nashville Railroad Company (L&N), and connecting carriers for delivery, and would not apply via routes involving other carriers whose participation would result in a short-haul of SCL's Family Line Systems. This tariff condition effectively eliminated Southern from participation. Southern opposed the proposed tariff.

The Commission found three things wrong with the tariff: it violated two conditions of the merger of the Seaboard Airline Railroad Company with Atlantic Coast Line (ACL) approved by the Commission in 1963; and it violated the provisions of the Act prohibiting discrimination between connecting carriers. 49 U.S.C.A. § 3(4).

The Commission decided that, although this was a new point-to-point movement of traffic that had not existed at the time of the merger, it violated Condition 1 of the merger which required SCL to

"maintain and keep open all routes and channels of trade via existing junctions and gateways," unless otherwise authorized by the Commission. The Commission held that the proposed tariff effectively closed a route which was required to be kept open under that merger condition. The significance of the decision comes in defining as an open route under the merger agreement a route which had never before been used by this new traffic. It appears to this Court that this is a reasonable interpretation of the condition, and the ICC's decision cannot be overturned as being irrational.

We do not decide the second and third points. The parties concede that if the Commission must be upheld on any one of the three grounds by which it denied the tariff, then the denial must be sustained, even though the Commission may have been wrong as to the other two grounds. The Commission's denial on the ground that the tariff violated Condition 1 of the merger agreement being valid, it is not necessary for us to reach the question of whether it also violates Condition 2 and § 3(4). Nor is it necessary for this Court at this time to be constrained by separate administrative proceedings before the Commission in which an administrative law judge recently issued a decision. *Seaboard Coast Line R. R. Co.— Investigation of Control and Modification of Traffic Conditions,* —— I.C.C. ——, Finance Docket No. 21215 (Sub-No. 2) (Feb. 22, 1979). For informational purposes, however, we set forth the decisions made by the Commission.

The Commission decided that the preference for SCL's wholly owned subsidiary, L&N, violated the required continuance of "present neutrality" among competing lines required by Condition 2 of the merger. The Commission in effect held that prior to the merger, L&N was not, as alleged, controlled by ACL, a party to the merger, and therefore could not be favored over other lines. SCL argues in its brief that neither the administrative law judge nor the Commission stated reasons for its decision. No decision on this point by this Court is necessary.

The third ground for the denial was that the tariff would violate § 3(4) of the Act which prohibits carriers from discriminating between connecting carriers. Apparently, it would not be violative of § 3(4) to devise a rate which preferred a wholly owned subsidiary for a long-haul tariff, over other connecting carriers. *See* 49 U.S.C.A. § 15(4). By the merger agreement conditions, SCL promised to treat L&N as a neutral carrier, but it is now a wholly owned subsidiary. We do not decide the issues thus raised.

### Decision

At the outset, it should be noted that this case turns on the construction of merger conditions imposed by the Commission under applicable Commission precedents. The Commission's interpretation of merger conditions and agency precedents is entitled to deference on judicial review. *See, e. g., Andrew Nelson, Inc. v. United States,* 355 U.S. 554, 558, 78 S.Ct. 496, 2 L.Ed.2d 484 (1958) (Commission's construction of language in motor carrier permit controlling unless clearly erroneous); *Chesapeake & Ohio Ry. Co. v. United States,* 187 U.S.App.D.C. 241, 571 F.2d 1190, 1194 (1977) (Commission's interpretation of merger conditions sustained unless arbitrary and capricious); *Kansas City Southern Ry. Co. v. United States,* 288 F.Supp. 742, 747–749 (W.D.Mo.1968) (meaning of merger conditions determined by reference to Commission precedents). Such deference is especially appropriate in the fashioning of merger conditions, a matter entrusted by statute to the agency's expert judgment, which the courts should ordinarily respect. *E. g., Florida East Coast Ry. Co. v. United States,* 259 F.Supp. 993, 997, 1016 (M.D.Fla. 1966), *aff'd per curiam,* 386 U.S. 544, 87 S.Ct. 1299, 18 L.Ed.2d 285 (1967); *Lehigh & New England Ry. Co. v. I. C. C.,* 540 F.2d 71, 80 (3rd Cir. 1976), *cert. denied,* 429 U.S. 1061, 97 S.Ct. 784, 50 L.Ed.2d 776 (1977); *Pittsburgh & Lake Erie R. R. Co. v. United States,* 294 F.Supp. 86, 99–100 (W.D.Pa. 1968).

Condition 1 of the routing and gateway conditions imposed in *Seaboard Air Line R. R. Co.—Merger—Atlantic Coast Line R. R. Co.*, 320 I.C.C. 122, 267–268 (1963), provides as follows:

1. Upon consummation of the merger, the Seaboard Coast Line Railroad Company shall maintain and keep open all routes and channels of trade via existing junctions and gateways, unless and until otherwise authorized by the Interstate Commerce Commission.

SCL argues that prior to the present decision, the condition uniformly had been held by the Commission to protect and require the maintenance of only those routes and channels of trade that were in existence at the time the condition at issue was imposed. In this case, it is undisputed that the traffic which would move under the proposed tariff was new traffic, resulting from the opening of a new market for the commodity involved, and that no movement of this traffic was occurring at the time of the 1967 merger. We are unpersuaded that this decision is contrary to prior Commission precedents.

The administrative law judge answered the contention here made succinctly:

At the time the merger was consummated, the same class rate on industrial sand from Marston to Wyoming applied over all routes, which included Southern as well as L&N. The existence of a movement at that time is not significant. The carriers operating over all routes held themselves out to provide the transportation upon tender of a shipment. The changed rate had the effect of denying Southern participation in the movement when it developed.

There is no real contention by SCL that the "existing junctions and gateways" have not been open and active both in the past and currently. The gateways to Southern's lines which will be affected by the proposed routing are Atlanta and Charlotte. SCL and Southern have operated routes and interchanged a considerable volume of freight at Atlanta and Charlotte. Nor does SCL argue that there was no published tariff at the time of the merger which would cover the transportation of industrial sand from Marston to Wyoming. Further, it is not contended that SCL's action in restricting routing of the traffic through its affiliate and denying Southern the opportunity to offer service at the lower rate did not constitute a closing of Southern's opportunity to move this traffic, often referred to as a "commercial closing." *Burlington Northern, Inc. v. United States*, 561 F.2d 167, 168 (8th Cir. 1977); *Southern Pacific Co.—Merger—Pacific Electric Ry. Co.*, 354 I.C.C. 100 (1977).

Petitioners rather contend they are not required to keep open this route because no traffic moved over this route at the published rate at the time of the merger.

Condition 1 is one of the five so-called "standard routing conditions" first prescribed by the Commission in *Detroit, Toledo & Ironton R. R. Co.—Control*, 275 I.C.C. 455 (1950), and routinely applied in many subsequent merger and control cases. *See, e. g., Southern Pacific Co. Merger*, 327 I.C.C. 38 (1964); *Norfolk & Western R. R. Co. Merger*, 307 I.C.C. 401 (1959). These conditions have become commonly known as the "DT&I" conditions.

Three prior decisions support the Commission's interpretation of Condition 1. All three arise out of conditions imposed in *South Georgia Ry. Co. Control*, 290 I.C.C. 281 (1954), which required the acquiring railroad to "keep open all routes" that existed at the time of the merger.

The Commission first interpreted this condition in *Salt Cake from Bessemer City, N. C., to Foley, Fla.*, 297 I.C.C. 320 (1955). The Commission said:

No shipment of salt cake has moved from Bessemer City to Foley under the present rate. However, for some time prior to the date on which the application for control was filed, the present . . . rate had been established to apply over routes embracing the Georgia & Florida. The existence of such rate and routes constituted a holding out to perform through transportation, and those routes

were included within the above-described condition.

297 I.C.C. at 321.

The entire Commission affirmed this rationale on reconsideration. *Salt Cake from Bessemer City, N. C., to Foley, Fla.*, 298 I.C.C. 544 (1956). There the Commission said:

> The respondents contend that since no traffic has moved on the 53-cent rate, no through route exists in connection with the protestant. In the prior report, it was found that the publication of the rate over such route constituted a holding out to perform through transportation and established a through route within the condition prescribed in the control proceeding. With this we agree.

298 I.C.C. at 545.

The final case involved in this South Georgia "keep open" condition is *Sodium from Evans City, Ala., to Foley, Fla.*, 299 I.C.C. 641, 643–644 (1957). In that case, as in the prior case, the acquiring railroad proposed a commodity rate lower than the existing class rate, with routing which excluded the complaining railroad. The Commission there said:

> The respondents contend that the mere publication and maintenance of the present exceptions class rates . . . did not constitute the establishment of a through route since none of this traffic has ever moved under those rates by way of protestant's lines. At the time of the filing of the application in the control proceeding, the class . . . rates then in effect had been established in connection with a general routing provision under which those rates applied over all routes made by use of the lines of any of the carriers parties to the governing tariff, to which the [protestant] was a party . . . . The open routing and rates thus constituted a holding out to perform through transportation and established through routes within the condition prescribed in the control proceeding.

The instant case is unlike the cases relied upon by SCL, which held that a mere combination of rates, over routes which did not move any traffic, was not sufficient to establish a route which had to be kept open. *E. g., Thompson v. United States*, 343 U.S. 549, 72 S.Ct. 978, 96 L.Ed. 1134 (1952). Unlike joint rates held out by agreement of railroads, these "combination rates" are arrived at by adding the sum of separate rates fixed by individual carriers forming a through route. In this case, the several carriers (including SCL and Southern) agreed to hold out and have held out for 25 years a single joint rate for the transportation of industrial sand from Marston to Wyoming. A joint through rate has been held conclusive evidence of a through route which is commercially open. *Rates, Various Commodities, Between Points in Canada, Midwest & East*, 318 I.C.C. 522, 523 (1962). The cases concerning the "combination rates" are inapplicable.

Citing *Refrigerants or Dispersant Gases, Louisiana & Kentucky to California*, 353 I.C.C. 790 (1977), SCL argues the Commission has held that the mere existence of routings at the time of the relevant merger was not controlling if those routings were not actively carrying traffic under consideration. There the Commission ruled that routes which did not actually move traffic prior to merger were not "open" routes protected by Condition 1. This ruling, however, was in a context substantially different from this case. In *Refrigerants* the merged company took defensive restrictive action in response to unilateral restrictive action already taken by the complaining railroad. Here, SCL, the merged company, initiated the restrictive action not as a defensive response to action of the complaining carrier. *Refrigerants*, therefore, is inapplicable.

The *Salt Cake* cases are sufficient to convince us that the Commission did not interpret Condition 1 entirely inconsistently with previous and subsequent decisions of the Commission, as argued, and that the Commission's interpretation is reasonable and must be affirmed.

PETITIONS FOR REVIEW DENIED.