# FEDERAL POWER COMMISSION *v.* MOSS ET AL.

No. 74–883. Argued December 3, 1975—Decided March 3, 1976

BRENNAN, J., delivered the opinion of the Court, in which WHITE, MARSHALL, BLACKMUN, and REHNQUIST, JJ., joined. BURGER, C. J., filed an opinion concurring in the judgment, *post,* p. 505. STEWART, POWELL, and STEVENS, JJ., took no part in the consideration or decision of the case.

*Mark L. Evans* argued the cause for petitioner. With him on the brief were *Solicitor General Bork, Drexel D. Journey, Robert W. Perdue,* and *Allan Abbot Tuttle.*

*Morton L. Simons* argued the cause for respondents. With him on the brief were *Barbara M. Simons, Charles F. Wheatley, Jr., William T. Miller, Frank W. Frisk, Jr., Richard L. Curry,* and *Bernard Rane.*\*

MR. JUSTICE BRENNAN delivered the opinion of the Court.

Section 7 (b) of the Natural Gas Act, 52 Stat. 824, as amended, 15 U. S. C. § 717f (b), provides ·that "[n]o natural-gas company shall abandon all

---

\**Jerome J. McGrath* filed a brief for the Interstate Natural Gas Association of America as *amicus curiae.*

or any portion of its facilities subject to the jurisdiction of the [Federal Power] Commission, or any service rendered by means of such facilities, without the permission and approval of the Commission first had and obtained, after due hearing, and a finding by the Commission . . . that the present or future public convenience or necessity permit such abandonment."[1]  The question presented in this case is whether the FPC may, upon a proper finding of public convenience or necessity, simultaneously authorize both the sale of natural gas in interstate commerce by a producer and the abandonment of the sale at a future date certain.  The Court of Appeals for the District of Columbia Circuit construed § 7 (b) to empower the FPC to authorize abandonment only when and if proposed at the end of the contract term, thus precluding power to authorize abandonment simultaneously with certificating new producer sales.  Accordingly, the Court of Appeals set aside the FPC order involved in this case insofar as it permits the Commission, at the time it issues a certificate of public convenience and necessity, to authorize the producer to terminate the sale at the end of the contract term.  164 U. S. App. D. C. 1, 502 F. 2d 461 (1974).  We granted certiorari. 422 U. S. 1006 (1975).  We reverse.

## I

FPC Order No. 455, 48 F. P. C. 218, issued August 3, 1972, is the order involved.  The order was promulgated

---

[1] Section 7 (b) of the Act provides in full text:

"No natural-gas company shall abandon all or any portion of its facilities subject to the jurisdiction of the Commission, or any service rendered by means of such facilities, without the permission and approval of the Commission first had and obtained, after due hearing, and a finding by the Commission that the available supply of natural gas is depleted to the extent that the continuance of service is unwarranted, or that the present or future public convenience or necessity permit such abandonment."

under FPC rulemaking authority pursuant to a notice of April 6, 1972, 37 Fed. Reg. 7345, as an addition to the FPC's general rules of practice and procedure, 18 CFR § 2.75 (1975). Order No. 455 established an "optional procedure for certificating new producer sales of natural gas." 48 F. P. C., at 218. The new procedure did not displace area pricing, but instead provided an alternative to "stimulate and accelerate domestic exploration and development of natural gas reserves." *Id.,* at 225. The procedure was necessary, the Commission found, because natural gas producers were frequently unable, due to hazards of area price revisions in lengthy appellate review proceedings, to rely upon rates established by the FPC in its area rate orders, and thus were discouraged from exploring for new gas and committing it to the interstate market. For "there is no assurance at the present time that a producer may not ultimately have to refund some of an initial rate . . . upon which the producer relied when it dedicated a new gas supply to the interstate market." *Id.,* at 222–223. "[T]he producer does not know . . . how much it will get if it develops and sells new gas to the interstate market. The producer knows for sure only that once it sells in interstate commerce it cannot stop deliveries." *Id.,* at 223. "This uncertainty," the Commission found, "has impeded domestic exploration and development." *Ibid.*

The optional procedure introduced by Order No. 455 was designed to "lessen rate uncertainty which has prevailed since the early 1960's." *Id.,* at 219. The procedure has several features. First, it permits producers to tender for FPC approval contracts for the sale of new natural gas[2] at rates that may exceed the maximum

---

[2] The optional procedure is available for sales of gas produced from wells commenced after April 6, 1972, and gas that has not previously been sold in the interstate market. 18 CFR § 2.75 (b) (5) (1975).

authorized by the applicable rate order.[3]   Second, the FPC will determine in a single proceeding whether the "public convenience and necessity" under § 7 (c) of the Act, 15 U. S. C. § 717f (c), warrants the issuance of a certificate authorizing the sale and whether the rates called for by the contract are "just and reasonable" under § 4 (a), 15 U. S. C. § 717c (a).   Third, a permanent certificate issued by the Commission and accepted by the producer is not subject to change in later proceedings under § 4 of the Act,[4] 15 U. S. C. § 717c, and the rates may be collected without risk of refund obligations.   48 F. P. C., at 226.   See 18 CFR § 2.75 (d) (1975).   Fourth, Order No. 455 authorizes inclusion in the permanent certificate of the abandonment assurance—or "pregranted abandonment"—called in question in this case.   18 CFR § 2.75 (e) (1975).[5]   The authority to include assurance that the producer may abandon the sale at the end of the contract term is, however, to be exercised only upon ap-

---

[3] After adoption of the optional procedure, the FPC established a national ceiling rate for some sales of natural gas.  Opinion No. 699, 51 F. P. C. 2212 (1974).  The optional procedure was then amended to permit producers to tender contracts for certification including rates exceeding the national ceiling, as well as area rates.  Order No. 455–B, 52 F. P. C. 1416 (1974).

[4] The procedure does not, however, limit the applicability of § 5, 15 U. S. C. § 717d.  See 18 CFR § 2.75 (d) (1975).  The Commission noted in Order No. 455 that it was unable to "bind a future Commission not to invoke the prospective operation of Section 5"; the Commissioners further stated that "[t]o the extent that this Commission can grant certainty of rates, we do so."  48 F. P. C. 218, 223 (1972).

[5] This provision reads as follows:

"Applications presented hereunder will be considered for permanent certification, either with or without pregranted abandonment, notwithstanding that the contract rate may be in excess of an area ceiling rate established in a prior opinion or order of this Commission."

propriate findings by the FPC of public convenience or necessity, as required by § 7 (b). Order No. 455–A, 48 F. P. C. 477, 481 (1972).

The importance to the producer of the pregranted abandonment provision is obvious. Pregranted abandonment gives the producer assurance that his present sale will not indefinitely commit the gas to what may be a lower priced interstate market: he will be free on the. contract expiration date to discontinue deliveries to the purchaser without having to demonstrate again that abandonment is consistent with the public convenience or necessity.

## II

The entire optional procedure of Order No. 455 was attacked in petitions for review before the Court of Appeals, which upheld the order in all respects save the pregranted abandonment authority.[6] In holding that § 7 (b) requires a public-convenience-or-necessity finding by the FPC at the time of the proposed abandonment, thus precluding such finding at the time of certification, the Court of Appeals stated, 164 U. S. App. D. C., at 12, 502 F. 2d, at 472:

"Pregranted abandonment would leave a producer free to discontinue service to the interstate market, perhaps years after the original certification, with no contemporaneous obligation on the producer to justify withdrawal of service as consistent with the public convenience and necessity. We think Section 7 (b) does not contemplate or authorize such procedure.

". . . It appears to us . . . that pregranted abandon-

---

[6] Respondents' cross-petition seeking review of the Court of Appeals' decision to the extent that it adversely resolved their contentions was denied. 422 U. S. 1020 (1975).

ment requires more clairvoyance than even the Commission's expertise reasonably encompasses."

We find nothing on the face of § 7 (b) to support the holding that the section "does not contemplate or authorize such procedure." There is no express provision prescribing the timing of the finding of public convenience or necessity that is prerequisite to FPC authority to allow the producer to abandon a sale. In the absence of an explicit direction, the inference may reasonably be made that Congress left the timing of the finding within the general discretionary power granted the FPC "to regulate the abandonment of service," S. Rep. No. 1162, 75th Cong., 1st Sess., 2 (1937); H. R. Rep. No. 709, 75th Cong., 1st Sess., 2 (1937). "[T]he Commission's broad responsibilities . . . demand a generous construction of its statutory authority," *Permian Basin Area Rate Cases,* 390 U. S. 747, 776 (1968) (footnote omitted), and that inference is plainly consistent with Congress' regulatory goals.

The reasoning of the Court of Appeals that pregranted abandonment requires "clairvoyance" overlooks the express power granted to the FPC in § 7 (b) to allow abandonment upon a proper finding that the *"present* or *future"* public convenience or necessity warrants permission to abandon. The power to authorize an abandonment upon finding that it is justified by *future* public convenience or necessity clearly encompasses advance authorization warranted by consideration of future circumstances and the necessary estimation of tomorrow's needs. That has been our conclusion when FPC authority to make forecasts of future events has been challenged in other contexts. For example, in rejecting the contention that the FPC could not consider forecasts of the future under the nearly identical standard of § 7 (e), *FPC* v. *Transcontinental Gas Corp.,* 365 U. S. 1, 29 (1961), stated that "a forecast of the direction in which future pub-

lic interest lies necessarily involves deductions based on the expert knowledge of the agency." Similarly, as to another agency, we have stated our unwillingness to let "uncertainties as to the future . . . paralyze the [Interstate Commerce] Commission into inaction." *United States* v. *Detroit & Cleveland Nav. Co.,* 326 U. S. 236, 241 (1945). Thus, to the extent that exercising the pregranted abandonment authority entails forecasting future developments affecting supply and demand, we cannot say that requiring this degree of "clairvoyance" renders the provision beyond FPC authority.

Furthermore, the FPC may determine that *present* supply and demand conditions require that pregranted abandonment be authorized in appropriate cases to encourage exploration for new gas and its dedication to the interstate market, since the unwillingness of producers to make indefinite commitments has made potentially available supplies inaccessible to the interstate market. We conclude therefore that an optional procedure encompassing pregranted authority intended to draw new gas supplies to the interstate market is clearly within FPC authority to permit abandonments justified by either *present* or *future* public convenience or necessity.[7]

Order No. 455 does not authorize specific abandonments. It merely establishes an optional procedure under which pregranted abandonment may be authorized in appropriate cases. Any pregranted abandonments approved under this procedure are subject to judicial review under the Act. See § 19 (b), 15 U. S. C. § 717r (b). We should not presume, as the Court of Appeals

---

[7] The FPC has disclaimed any reliance on the ground, permitted under § 7 (b), that "the available supply of natural gas is depleted to the extent that the continuance of service is unwarranted." We therefore have no occasion to address the question whether pregranted abandonment on that ground would exceed FPC authority.

did, that the Commission is not competent to make proper findings supported by substantial evidence and consistent with § 7 (b) in approving pregranted abandonment. Rather, the question whether particular pregranted abandonment authorizations are beyond the Commission's expertise should await resolution in concrete cases. See *FPC* v. *Texaco, Inc.*, 417 U. S. 380, 392 (1974).[8] It suffices for the purposes of this case that we read § 7 (b) as leaving the timing of approval of abandonments to FPC discretion.[9]

### III

The Court of Appeals stated that its construction of § 7 (b) as denying FPC authority to authorize abandon-

---

[8] Paradoxically, similar considerations led the Court of Appeals to reject respondents' challenge to a provision of the optional procedure requiring the Commission to determine the reasonableness of future rate escalations included in contracts submitted pursuant to the procedure. Yet no attempt was made to distinguish the case of future rate escalations from that of pregranted abandonment in this respect. The Court said:

"We cannot say as an abstract proposition of law that it is impossible for the Commission to make an advance determination of 'reasonableness' in proceedings under Section 4. Although as a practical matter one may be skeptical about the ability of the Commission to succeed in this endeavor, we think it may make the attempt. Whether it succeeds will depend upon the evidentiary basis for the escalations proposed in a given contract and the reasonableness of Commission findings and projections supporting and approving such escalations. The question is one of proof which can be answered only on a record setting out a particular proposal and the evidence supporting it." 164 U. S. App. D. C., at 8, 502 F. 2d, at 468.

[9] Respondents claim that the pregranted abandonment provision amounts to deregulation akin to that condemned in *FPC* v. *Texaco, Inc.*, 417 U. S. 380, 400 (1974). But, unlike the small-producer exemption involved there, the FPC in the optional procedure retains full control over its regulatory jurisdiction.

ment on a future date certain at the time of certification was "fortified" by *Sunray Mid-Continent Oil Co.* v. *FPC,* 364 U. S. 137 (1960) (*Sunray II*). *Sunray II* held that the FPC had authority to tender a certificate of public convenience and necessity without time limitation to a producer who applied for a certificate authorizing sales for 20 years only. The Court reasoned, *id.,* at 142:

"If petitioners' contentions, as to the want of authority in the Commission to grant a permanent certificate where one of limited duration has been sought for, were to be sustained, the way would be clear for every independent producer of natural gas to seek certification only for the limited period of its initial contract with the transmission company, and thus automatically be free at a future date, untrammeled by Commission regulation, to reassess whether it desired to continue serving the interstate market."

We understand the Court of Appeals to read this passage as implying that a limited-term certificate would be barred by the Act, and that a permanent certificate with pregranted abandonment would also be barred since such a certificate, as the FPC concedes, Brief for FPC 22, is legally and functionally indistinguishable from a limited-term certificate.[10] But the Court of Appeals' reading of *Sunray II* was patently erroneous. *Sunray II* in

---

[10] The Court of Appeals found that pregranted abandonment has "the same potentiality of prejudice to consumers" that this Court was concerned about in *Sunray II.* 164 U. S. App. D. C., at 12, 502 F. 2d, at 472. In that case, however, Sunray's position would have removed FPC discretion not to issue limited-term certificates whenever a producer sought a limited certificate. Both *Sunray II* and today's decision maintain FPC discretion in this regard, while the Court of Appeals' conclusion reduces the FPC's ability to exercise its regulatory responsibility.

fact indicated that the FPC is authorized to issue limited-term certificates. The Court of Appeals for the Tenth Circuit had addressed that question at an earlier stage of the litigation and had held that the FPC was authorized to issue such certificates. *Sunray Mid-Continent Oil Co. v. FPC*, 239 F. 2d 97 (1956), rev'd on other grounds, 353 U. S. 944 (1957) (*Sunray I*).[11] *Sunray II* implicitly approved this holding in stating, 364 U. S., at 157: "There is no contention that the Commission was again indulging in the erroneous notion that it had no power to issue a limited certificate."

Thus, rather than imply that the Act forbids the issuance of a limited-term certificate, *Sunray II* approved the holding of the Court of Appeals for the Tenth Circuit that the Act permits the issuance of such a certificate.[12] *Sunray II* therefore supports the conclusion we have reached and does not fortify the Court of Appeals' construction of § 7 (b). In both the case of the limited-term certificate and the case of the permanent certificate with pregranted abandonment, the FPC determines at the time of certification that the present or future public convenience or necessity justifies the issuance of a certificate that allows discontinuance of service at a future date certain without need for further proceedings.

---

[11] The first decision of the Court of Appeals for the Tenth Circuit was reversed in *Sunray I* on the ground that the Court had itself decided whether the FPC should have issued a limited-term certificate, rather than remanding to the Commission to resolve this question in the first instance, 353 U. S. 944. *Sunray II* sustained the Court of Appeals' later affirmance of the FPC's issuance of an unlimited certificate, 267 F. 2d 471 (1959).

[12] Moreover, if issuance of limited-term certificates were barred by the Act, there would have been no need to decide *Sunray II*. In that circumstance the producer could hardly have complained that the FPC failed to recognize its request for only a limited certificate, since such a reading of the Act requires the FPC in all cases to issue unlimited-term certificates.

The judgment of the Court of Appeals is reversed insofar as it set aside the pregranted abandonment provision of Order No. 455, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

MR. JUSTICE STEWART, MR. JUSTICE POWELL, and MR. JUSTICE STEVENS took no part in the consideration or decision of this case.

MR. CHIEF JUSTICE BURGER, concurring in the judgment.

I concur in the judgment of the Court, but with respect I cannot agree that the holding in *Sunray Mid-Continent Oil Co.* v. *FPC*, 364 U. S. 137 (1960) (*Sunray II*), is as categorical as the Court suggests. I therefore do not agree that the Court of Appeals' reading of *Sunray II* is "patently erroneous." *Ante*, at 503.

The optional procedure established by Order No. 455 does not appear to be precisely the same as a limited-term certificate. Under the new procedure, the Commission issues a *permanent* certificate to the producer. The producer is therefore authorized to supply the interstate market indefinitely. The additional and novel feature is that the producer is apparently given a free choice at the end of the contract term; he can continue to supply the interstate market pursuant to his permanent certificate, or he can abandon any further sales at the end of the particular contract term. This decision is left entirely in the hands of the producer. The Commission has no voice whatever in this critical decision; and it does not know in advance what the producer will do. This seems to me far different from granting a limited-term certificate; in that instance, the FPC knows that the particular supplies of gas will end at a date certain,

unless both the producer *and* the Commission decide that the supply should continue.

This factor of unregulated choice by the producer raises the very evils which the Court pointed out in *Sunray II, supra:*

> "[E]very independent producer of natural gas . . . [would] be free at a future date, untrammeled by Commission regulation, *to reassess whether it desired to continue serving the interstate market."* 364 U. S., at 142.

The evil seems even more acute here. For the Commission has abdicated entirely to the producer the eventual choice of supplying or cutting off gas to interstate markets. This relinquishment of regulatory authority seems to me inconsistent with the purposes and design of the Natural Gas Act.

However, the Court accepts *Sunray II* as affording broad discretion to the Commission in such matters, and *stare decisis* compels me to accept the result.