**PENNZOIL OFFSHORE GAS OPERA-TORS, INC., et al., Petitioners,**

v.

**FEDERAL POWER COMMISSION, Respondent.**

**Nos. 76–3361, 76–3452 and 76–3819.**

United States Court of Appeals, Fifth Circuit.

Oct. 12, 1977.

Jeron L. Stevens, J. Gregory Copeland, Gray Jennings, A. Duncan Gray, John M. Young, M. Diane Barber, Houston, Tex., for petitioners in 76–3361 and 76–3819.

Allan Abbot Tuttle, Sol., FPC, Drexel D. Journey, Gen. Counsel, Philip R. Telleen, Atty., Federal Power Commission, Washington, D. C., for Federal Power Commission in all cases.

Neal Powers, Jr., Houston, Tex., for petitioners in 76–3452.

1. ECEE, Inc.; Pennzoil Offshore Gas Operations, Inc.; Pennzoil Producing Company; Pinto, Inc.; and Texas Offshore Gas Operations, Inc.

   On July 3, 1963, the Commission consolidated for hearing the applications filed by ECEE, Inc.; Pinto, Inc.; Texas Offshore Gas Operations, Inc.; and Pennzoil Offshore Gas Operations, Inc., in Docket No. C173–456. The Commission considered the application of Pennzoil Producing Company separately in Docket No. C172–321.

2. Unless otherwise noted, all subsequent citations of the Commission's regulations are to Title 18 of the Code of Federal Regulations.

3. § 2.75(n) provides in part:
   (n) Upon the filing of an application under this section, deliveries pursuant to the provisions of the tendered contract may be commenced, pending review of such application by the Commission.
   At the time of petitioners' filings, § 2.75(o) provided:

Before CLARK, RONEY, and TJOFLAT, Circuit Judges:

CHARLES CLARK, Circuit Judge:

Petitioners,[1] all natural gas producers, applied to the Federal Power Commission (Commission) for Certificates of Public Convenience and Necessity under the Commission's "Optional Pricing Procedure," 18 C.F.R. § 2.75,[2] which would permit petitioners to contract the sale of gas from offshore federal domain lands to Sea Robin Pipeline Company (Sea Robin). Pursuant to subsections 2.75(n) and (o),[3] petitioners began delivery of the gas to Sea Robin at the applicable area rate of $.26 per Mcf prior to the Commission's issuance of any certificates and subsequently filed notices of increases to the proposed contract rate of $.35 per Mcf to be effective 6 months after the dates of initial deliveries provided the Commission had not acted upon their applications.

Following these filings, administrative law judges approved the petitioners' original applications and their proposed contract rates. Each of these decisions contained the following provision:

> (o) If the parties elect to commence deliveries as set forth in subsection n., such deliveries will be made at rates no higher than the prevailing area ceiling rate and shall so continue for six months unless the Commission has made its final order on the application at an earlier date; at the end of such six-month period (if the Commission has not made its final order), the seller upon the filing of a notice of change in rate pursuant to Section 154.94 of the Commission's Regulations shall be entitled to receive without refund obligation and the purchaser shall be entitled to pay, the rates specified in the contract, and such contract rates shall continue as the effective rates until the Commission enters its final order on the certificate application.

The Optional Pricing Procedure has since been amended to permit producers to tender contracts including rates exceeding the national ceiling as well as the applicable area rate and to extend the initial 6-month waiting period to 9 months. Order No. 455–B, 52 F.P.C. 1416 (1974).

The contracts concerned herein are accepted for filing effective the date of initial delivery . . . under the authorization granted herein. The Applicants shall advise the Commission of the date of initial delivery within 10 days thereof.

The Commission adopted the decisions of the administrative law judges without modification and issued the requested Certificates of Public Convenience and Necessity.[4]

Petitioners then wrote letters to the Commission, dated September 6, 1974 and October 9, 1973, which referred to the notices of increases previously given and stated

> [P]ursuant to the Commission's Order[s] . . . Affirming [the] Presiding Administrative Law Judge's Decision[s] . . . Item 5. (c) of the [petitioners' original applications] should read "Date of Initial Delivery."

The effect of this change, which was not explicitly set out in petitioners' letters, was to modify their original notices of increases to provide for the collection of the $.35 per Mcf rate from the commencement of initial deliveries under their contracts rather than 6 months from the date of their initial filings. After 30 days had passed without any Commission response to petitioners' September and October letters, the Producers then retroactively collected from Sea Robin the difference between the area rate and the certified rate for the initial 6 months of deliveries and subsequently paid income taxes and royalties on these additional sums.

On April 2, 1976, and July 28, 1976, in response to subsequent rate change filings of petitioners, the Commission issued orders which accepted the original notices of rate increases authorizing the collection of $.35 per Mcf as of 6 months after the dates on which initial deliveries began. Following petitioners' motions for rehearing and clarification, the Commission issued orders of July 12, 1976, and September 24, 1976, rejecting the petitioners' rate change filings as amended by their September and October letters, denied rehearing, and ordered refunds of any amounts in excess of the area rate collected for the initial 6 months of deliveries. We have consolidated the producers' petitions for review.

■ The Optional Pricing Procedure provided by § 2.75 is an alternative to regular area pricing which is designed to stimulate domestic exploration and development of natural gas reserves. *See generally F.P.C. v. Moss*, 424 U.S. 494, 96 S.Ct. 1003, 47 L.Ed.2d 186 (1976), *reversing in part*, 502 F.2d 461 (D.C.Cir.1974), *affirming in part and reversing in part*, F.P.C. Order Nos. 455, 48 F.P.C. 218 (1972) and 455–A, 48 F.P.C. 477 (1972). *See also* F.P.C. Order No. 455–B, 52 F.P.C. 1416 (1974). We only confront the narrow issues of whether the Commission's rejection of petitioners' amended rate filing notices was proper and whether its refund orders are arbitrary and capricious.

When petitioners applied for a new rate change, subsections 2.75(n) and (o) permitted them to begin deliveries of gas under their contracts prior to certification, provided that any gas so delivered was priced at rates no higher than the applicable area rate. If an applicant does not receive Commission approval within 6 months of its initial deliveries, it may file notice and collect the rate specified in the contract, without refund obligation, until the Commission acts upon the applications under these subsections. Alternatively, the Optional Pricing Procedure would permit an applicant to apply for a certificate and defer initial deliveries until after the Commission's final order. The procedure first utilized was the one chosen by petitioners.

Citing that portion of the decisions of the Administrative Law Judge which provided that petitioners' proposed contract rate of $.35 per Mcf was "accepted for filing effec-

---

4. The decisions of the Administrative Law Judges were issued August 10, 1973, in Docket Nos. C173–456, et al., and October 12, 1973, in Docket No. C172–321.

The Commission issued the certificates sought in Docket Nos. C173–456, et al., on September 14, 1973, and the certificate sought in Docket No. C172–321 on March 4, 1974.

tive the date of initial delivery," petitioners argue that their amendment letters which provided for the collection of that rate from the date of initial deliveries was based upon the plain language of the Commission's orders and is neither expressly prohibited by F.P.C. Order No. 455, 48 F.P.C. 218, *clarified*, No. 455–A, 48 F.P.C. 477 (1972), *amended* No. 455–B, 52 F.P.C. 1416 (1974), or by Section 2.75. Petitioners point out that subsequent Commission orders issued under the Optional Pricing Procedure evidence a recognition by the Commission that the language contained in the instant orders implicitly approved the petitioners' action.[5] They argue that the Commission's present attempt to negate this implicit approval is arbitrary and capricious, *citing Highland Resources, Inc. v. F.P.C.*, 537 F.2d 1336 (5th Cir. 1976).

Section 2.75 does not proscribe the producer's collection of the difference between the area rate and the rate found to be just and reasonable *after* the issuance of permanent certificates. At the same time, however, it does not permit the retroactive collection of increases in rates attempted by petitioners. Nor does the language of the regulation suggest that the Commission intended that producers be permitted to collect the contract rate retroactively to the date of initial delivery once their rates proposed in the contract were finally approved. Indeed, petitioners' actions acknowledged this for they did not attempt to make a retroactive collection of rates until after the issuance of the Commission orders which they argue form the basis for their special position.

The last sentence of the order language upon which petitioners rely provides "The applicants shall advise the Commission of the date of initial delivery within 10 days

thereof." This suggests that the administrative law judges had in mind the section 2.75 procedure which allows producers to apply for a certificate but defer initial deliveries until the Commission issues a final order. Although it is not clear that it was realized that ECEE, Pinto, and Texas Production Company had begun their deliveries, portions of the decisions of the administrative law judges also indicate that they were aware that some producers had commenced their deliveries.[6] The Commission notes that the orders in question were omnibus orders entered in numerous consolidated dockets and contends that the phrasing seized upon by petitioners was inapt "boilerplate." Our resolution of the present petitions, however, does not depend on accepting this contention.

The argument that the quoted language from the orders implicitly approves the petitioners' subsequent action must acknowledge that the language would then create an hiatus in the Commission's Optional Pricing Procedure. Thus petitioners were not confronted with a situation entitling them "to rely on published pronouncements of the Commission as to what action they need or need not take," as was the case in *Highland Resources, Inc. v. F.P.C., supra.* The petitioners' construction of the instant orders is directly contrary to the relief sought in their original applications, and its enforcement would permit a reallocation of costs under the petitioners' contracts which the Commission clearly did not contemplate when promulgating its Optional Pricing Procedure. Such a result would authorize price deviations without benefit of the Commission's notice and comment procedures. That the Commission has modified its orders in subsequent Optional Pricing Procedures more clearly to preclude the

---

**5.** In McCulloch Oil Corp., Opinion No. 713, —— F.P.C. ——, 3 Fed. Power Serv. (Matthew Bender) 5–200 (Nov. 26, 1974), the Commission ordered: "The contract concerned herein . . . is accepted for filing effective six months after the date of initial delivery on July 5, 1973, under the authorization granted herein."

**6.** For example, in Dkt. Nos. C172–321, the decision provides: "Deliveries of gas [by Pennzoil

and Midwest] commenced on May 10, 1973, when Sea Robin's pipeline facilities became ready for operation." In Dkt. Nos. C173–456, the decision noted: "[A]fter the filing of the instant applications, deliveries were commenced, allegedly pursuant to Section 2.75(n) and (*o*), on February 21, 1973 by Pogo, and by Offshore and Southern on May 4, 1973."

possibility of such an interpretation indicates that such a result was not contemplated.

Petitioners argue, however, that they were justified in relying upon the Commission's failure to take action on their amended notices of rate increases. They contend this non-action evidenced Commission approval and that under these circumstances they acted properly in collecting the additional sums and subsequently paying taxes and royalties on such amounts. The petitioners also claim that their rate amendment letters were filed pursuant to 18 C.F.R. § 154.94 in order to trigger the operation of 15 U.S.C. § 717c(e).[7] Yet these letters would be superfluous if petitioners possessed the retroactive right to apply the contract rates as approved by the Commission as they now contend. Moreover, even if the letters are viewed as an attempt by petitioners to seek an amended rate change, their "amendment" results in parts of the original applications requesting that the $.35 per Mcf rate begin 6 months from the date of initial delivery while other parts of the same application request that the $.35 per Mcf rate begin on the initial date of delivery. Petitioners' amendment letters contain no explicit provisions that would put the Commission on notice that they intended to make retroactive collections of the contract rates approved by the Commission. Nothing in the Optional Pricing Procedure contemplates such a course. For all of these reasons, we hold these letters were inadequate notice to the Commission of proposed changes in rate by petitioners under section 154.94. The Commission was not barred from ordering their refund.

Finally, we are unpersuaded by petitioners' argument that the Commission's refund order is arbitrary and capricious. Any hardship suffered by petitioners is the result of their own actions.[8] If the Commission's orders were confusing as to intent or as to their effect on the parties, they should have filed a motion for clarification rather than writing these cryptic amendment letters. Not only did the letters make the applications they amended internally inconsistent, they did not purport to seek exceptions to the Commission's Optional Procedure as it was initially invoked by petitioners.

AFFIRMED.

---

**7.** Section 154.94 of the Commission's Regulations requires at least thirty days notice, unless waived, of any proposed rate change and allows the producer to set the date when the new schedule is to go into effect. 15 U.S.C. § 717c(e) empowers the Commission to suspend the proposed new schedule within thirty days of filing; however, if no action is taken within the prescribed time period, the new rates become effective and cannot be suspended or challenged except through Section 5 proceedings which have prospective effect only.

**8.** 43 U.S.C. § 1339 provides a mechanism for the recovery by a lessee of excess royalty payments, albeit without interest.