**COLUMBIA GAS DEVELOPMENT CORP., et al., Petitioners,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent.**

**POGO PRODUCING CO., Petitioners,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent.**

Nos. 80–1135, 80–1320.

United States Court of Appeals,
Fifth Circuit.

July 31, 1981.

H. Carter Howard, Lowell E. Williams, Scott Douglas Cunningham, Houston, Tex., Michael J. Manning, Patrick J. Keeley, Fulbright & Jaworski, Washington, D. C., for Columbia Gas Development Corp.

Paul W. Fox, Charles H. Shoneman, Bracewell & Patterson, Washington, D. C.,

for Texas Gas Exploration Corp.; Dennis J. Kelly, Mary Anne McGee, Houston, Tex., of counsel.

Baker & Botts, Jeron Stevens, George F. Goolsby, Paul G. VanWagenen, Houston, Tex., for Pogo Producing Co., et al.

Baker & Botts, R. Gordon Gooch, Charles E. Suffling, Charles M. Darling, Washington, D. C., Michael B. Silva, Phyllis G. Rainey, Houston, Tex., for Tenneco Oil Co.

Jerome Nelson, Sol., Washington, D. C., John H. Conway, Tulsa, Okl., for Federal Energy Regulatory Commission.

Michael J. Manning, Washington, D. C., for Forrest Oil Corp. and Coleve.

Patrick J. Keeley, Michael J. Manning, Washington, D. C., for Energy Ventures, Inc.

Ralph J. Pearson, Jr., Paul J. Broyles, Robert P. Thibault, John A. Ramsey, Karen A. Berndt, Houston, Tex., for Texaco, Inc.

C. Roger Hoffman, Martin N. Erck, Houston, Tex., for Exxon Corp.

Neal Powers, Jr., Houston, Tex., for Ecee, Inc., et al. and Inexco Oil Co.

Arthur S. Berner, Houston, Tex., for Inexco Oil Co.

Larry Pain, Bartlesville, Okl., for Phillips Petroleum Co.

David M. Whitney, Dallas, Tex., for Aminoil USA, Inc.

Patricia A. Curran, Houston, Tex., for Pennzoil Oil & Gas Inc., Pennzoil Co. and Pennzoil Producing Co.

Before HENDERSON, ANDERSON and SAM D. JOHNSON, Circuit Judges.

SAM D. JOHNSON, Circuit Judge:

The Federal Energy Regulatory Commission (FERC) in the orders under review provided that natural gas producers holding "optional procedure" certificates under 18 C.F.R. § 2.75 could not seek the new, higher ceiling rates under the Natural Gas Policy Act of 1978 (NGPA), 15 U.S.C.A. §§ 3301–3432. Petitioners seek review of these FERC orders. Because this Court finds that FERC based its order on a proper interpretation of the NGPA, its own regulations, and the conditions imposed on the certificate granting petitioner Columbia Gas Development Corporation authority to sell its gas in interstate commerce, the Commission's orders are accordingly affirmed.

I. *Background and Facts*

Under the Natural Gas Act of 1938 (NGA), 15 U.S.C.A. §§ 717–717w, interstate sales of natural gas were regulated in a three-fold manner. First, a certificate of public convenience and necessity was required to enter the interstate market. NGA § 7(c) and (e), *id.* § 717f(c), (e). Second, the price at which interstate gas could be sold must have been "just and reasonable." NGA §§ 4(a), 5(a), *id.* §§ 717c(a), 717d(a). Finally, Commission approval was necessary for any change in a contract price for gas. No change in price, or in any of the terms of the certificated contract, could be effected unless the seller gave thirty days notice to the Commission and to the public. NGA § 4, *id.* § 717c(d), (e). During that thirty-day period, the Commission could suspend the proposed rate increase for up to five months to determine whether the new rate was just and reasonable. If after five months the Commission had not made that determination, the proposed rate increase became effective automatically; the Commission still retained the power, however, to disallow the increase in the event it found the new rate not to be just and reasonable. The seller was then required to refund to its buyers any revenues it collected as a result of the new rates that were in excess of what was determined to be just and reasonable. *See generally Freeport Oil Co. v. FERC*, 638 F.2d 702, 703–05 (5th Cir. 1980).

For the most part the Commission set ceiling rates for producer sales on an area, and then later on a nationwide, basis. These "just and reasonable" area or national ceiling rates became the benchmark for

the Commission's acceptance or rejection of applications under NGA § 7 for certificates of public convenience and necessity. When area rates proved to be too low to attract new gas to the interstate market, and interstate pipelines began suffering extensive curtailments in natural gas deliveries, new measures were undertaken in an attempt to secure adequate supplies of new gas for the interstate market. *See generally id.* at 707.

One of these efforts was 18 C.F.R. § 2.75, Optional Procedure for Certificating New Producer Sales of Natural Gas.[1] Unlike an earlier unsuccessful attempt that was designed to attract short term supplies of gas, section 2.75 was intended to stimulate the immediate introduction of r·•w, long-term (permanently dedicated) gas supplies into the interstate market. This measure was expressly stated to be an alternative to, not a replacement of, the then existing area rate procedures and decisions. Under section 2.75, producers were permitted to tender, for Commission approval, contracts for the sale of new natural gas at rates above the then prevailing ceiling rate and judged by the producer as adequate to induce the proposed drilling. In a single proceeding the Commission would determine whether the public convenience and necessity warranted the issuance of the certificate and whether the rates requested were "just and reasonable" under section 4 of the NGA.[2] A permanent certificate issued by the Commission and accepted by the producer was not subject to change in later proceedings under section 4 of the NGA, and therefore the rates could be collected without risk of refund obligations. Finally,

the permanent certificate could include abandonment assurance or "pregranted abandonment" at the end of the contract term. Although the rate established under section 2.75 was not subject to increase in a section 4 proceeding, the Commission in the future could still decrease it by invoking the prospective operation of section 5 of the NGA. *See FPC v. Moss*, 424 U.S. 494, 497–98, 96 S.Ct. 1003, 1006, 47 L.Ed.2d 186 (1976); *Freeport Oil*, 638 F.2d at 708–09.

In return for obtaining under the optional procedure the benefit of increased certainty and a higher price, 18 C.F.R. § 2.75(m)(1) provided that, upon acceptance of a certificate issued under the optional procedure, the seller unconditionally agreed to "waive all rights to seek future rate increases under Section 4 of the Natural Gas Act with respect to the contracts submitted, other than price escalations, if any, as certificated by the Commission."[3]

On November 9, 1978, the NGPA became law. Its pricing and certain other provisions extend to all interstate and intrastate sales of natural gas on or after December 1, 1978. NGPA § 101(b)(4), *id.* § 3311(b)(4). Title I of the NGPA establishes the ceiling price structure for producer sales of natural gas. Petitioners seek to charge rates under two of those pricing provisions—sections 102(d) and 104, *id.* §§ 3312(d), 3314.

Both of these pricing provisions involve gas that is "committed or dedicated to interstate commerce" within the meaning of the NGPA. Section 102(d) applies to gas produced from newly discovered reservoirs under old leases on the Outer Continental Shelf. Section 104 applies to natural gas "committed or dedicated in interstate com-

---

1. FPC Order No. 455, 48 F.P.C. 218 (1972), *amended,* Order No. 455–A, 48 F.P.C. 477 (1972), *aff'd in part and set aside in part, Moss v. FPC,* 502 F.2d 461 (D.C.Cir.1974), *aff'd in part, rev'd in part and remanded,* 424 U.S. 494, 96 S.Ct. 1003, 47 L.Ed.2d 186 (1976).

2. Such a determination would include the use of actual and projected costs, rate of return, estimated natural gas reserves, deliverability, and discounted cash flow analysis. On the basis of the data showing that the gas could only be produced at the requested price, the contract prices would accordingly be found to be "just and reasonable." For a summary of

how the standards and factors used in determining the reasonableness of the proposed rate have fared in the courts, see *Public Serv. Comm'n v. FERC,* 589 F.2d 542 (D.C.Cir.1978).

3. Certificated escalations were pursuant to fixed or definite price escalation clauses in the gas purchase contract, which increase the price by specific amounts at definite future dates, and pursuant to Btu price adjustment clauses, state production tax clauses, and compression/dehydration clauses, which adjust the contract price in accordance with specified changes in operating costs or gas quality. 18 C.F.R. § 2.75(f).

merce" within the meaning of the NGPA on or before November 8, 1978, and for which a just and reasonable NGA rate was in effect on that date. Section 601(a)(1)(B), 15 U.S.C.A. § 3431(a)(1)(B), provides that certain types of natural gas subject to NGA jurisdiction are removed from that jurisdiction on December 1, 1978. Gas priced under either sections 102(d) or 104 of the NGPA is not within section 601(a)(1)(B), and therefore is not entitled to removal from NGA jurisdiction under that provision.

In the interim regulations implementing the NGPA, and in Order Nos. 64 and 64–A,[4] which promulgated the final rule here under review, the Commission took the position that producers operating under optional procedure certificates, and whose gas is not removed by NGPA § 601 from NGA jurisdiction, could not collect NGPA prices. The basis for this position was the section 2.75(m)(1) waiver: to change a contract for gas still subject to NGA jurisdiction, an NGA § 4 rate change filing is still required and such a rate increase filing was precluded by the optional procedure certificate waiver condition. The optional procedure certificate holder may not collect, in such a case, any rate or escalation thereof other than the rate and escalations specified in the contract and certificated by the Commission. Section 104 incorporates and carries forward all prior FPC rate orders. *Pennzoil Co. v. FERC*, 645 F.2d 360, 380 n.39 (5th Cir. 1981). Therefore, the optional procedure rates for each producer are NGPA § 104 ceiling prices. Order Nos. 64 and 64–A preclude optional procedure certificate holders from collecting the section 104(b)(1)(A)(ii) monthly inflation adjustment to section 104 ceiling prices, and preclude collection of the section 102(d) price to the extent that it is in excess of the certificated price. As the Commission stated in Order No. 64–A:

> The question is not whether the [inflation adjusted] ceiling price of section 104 ap-

plies to sales of natural gas made under optional pricing certificates. Quite clearly it does. Nor is the question one of the Commission's rate-setting authority under the NGA as opposed to (or superseded by) its rate-setting authority under the NGPA. The question is the scope of the waiver made by those who accepted certificates issued under the optional rate procedure and its continued applicability. . . . The point is not whether the gas qualifies for the higher NGPA price, but whether one may collect that higher price. As with natural gas priced under section 104, a holder of an optional certificate whose gas sales qualify for the section 102(d) price is precluded under the terms of his certificate from filing under section 4(d) of the NGA to collect the higher price.

A producer holding an optional procedure certificate and whose gas remains subject to the NGA can only petition the Commission for special relief, on an individual basis, removing the waiver condition.

Petitioner Columbia Gas Development not only participated with the other petitioners in the administrative process resulting in Order Nos. 64 and 64–A, it filed contract amendments, to collect any higher ceiling prices, for certain gas currently under optional procedure certificates, and made a blanket affidavit filing[5] to collect NGPA inflation adjustments to the optional procedure prices. The Commission rejected these filings on the same grounds as in Order Nos. 64 and 64–A. Columbia applied for rehearing of the orders rejecting those filings, and includes those orders in this petition for review.

II. *The Scope of the Optional Procedure Certificate Waiver In Section 2.75(m)(1)*

The first issue in this case is whether or not the language of the regulation requires

---

4. Order No. 64, Final Regulations Implementing Sections 104 and 106(a) of the Natural Gas Policy Act of 1978 (Jan. 3, 1980); Order No. 64–A, Order Denying Applications for Rehearing and Stay and Amending Regulations (Feb. 27, 1980).

5. The blanket affidavit filing was made under 18 C.F.R. § 154.94(h), which permits a one-time filing to collect NGPA monthly inflation adjustments. This eliminates the necessity of making future monthly filings.

waiver of the general right to file for future rate increases, or whether it is limited to rate increase filings for particular types of rates or rates from a particular source of rate making authority.

Section 2.75(m)(1), the crux of the dispute in this case, provides that "[b]y acceptance of a certificate issued hereunder, the seller-applicant unconditionally agrees to (1) waive all rights to seek future rate increases under Section 4 of the Natural Gas Act with respect to the contract submitted, other than price escalations, if any, as certificated by the Commission . . . ." Section 2.75(f) provides that no contract would be accepted for filing under the optional procedure if the contract included "any type of indefinite pricing clause" other than "BTU price adjustment clauses, clauses to reflect changes in state production taxes and clauses allowing for the recovery of compression and dehydration charges." Area rate clauses are expressly included within indefinite pricing clauses under this regulation. Therefore, contracts could be certificated with fixed (definite) escalation clauses and the three specified types of indefinite escalation clauses dealing with certain direct operating cost and gas quality changes.

The Commission interprets the regulation to waive all rights under NGA § 4 to seek any and all future rate increases (with the exception of certificated escalation clauses as specified in section 2.75(f)). The petitioners' position would rewrite the regulation to waive "all rights to seek future Natural Gas Act rate increases." In other words, the Commission's focus is on the filing procedure, while the petitioners' is on the type of rates. These two interpretations are possible because the phrase "under Section 4" could modify either "all rights" or "rate increases." The question this case presents us is which of these two meanings does the regulation have?

An agency's interpretation of its own regulation is entitled to great deference. *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965). Administrative regulations such as this one are to be interpreted broadly and liberally to

effectuate their central purposes. *Pennzoil Co. v. FERC*, 645 F.2d 360, 383 (5th Cir. 1981); *Baldridge v. Hadley*, 491 F.2d 859, 864 n.2 (10th Cir.), *cert. denied*, 417 U.S. 910, 94 S.Ct. 2608, 41 L.Ed.2d 214 (1974). This Court holds that FERC's interpretation of section 2.75(m)(1) as a waiver of the general right to make rate increase filings, which precludes the collection of NGPA ceiling prices, is not plainly erroneous, *United States v. Larionoff*, 431 U.S. 864, 872, 97 S.Ct. 2150, 2155, 53 L.Ed.2d 48 (1977), clearly unreasonable, *Homan & Crimen, Inc. v. Harris*, 626 F.2d 1201, 1208–09 (5th Cir. 1980), or inconsistent with the statute under which it was promulgated, *Larionoff*, 431 U.S. at 873, 97 S.Ct. at 2156. This Court does so on the basis of the purpose of the optional procedure within the context of the regulatory scheme in which it was promulgated, the purpose and language of the waiver, and the use of the waiver in the face of changed regulatory circumstances.

The provision of the optional procedure was in recognition that certain higher cost gas supply projects required an interstate market rate greater than what was currently available. The Commission therefore provided the producer the opportunity for an individual price determination as an alternative to ceiling prices of general applicability. The purpose of the waiver, including the waiver of the right to make rate increase filings pursuant to an area rate clause, was that the optional procedure should not just be an option that the producer could switch back and forth between with general ceiling prices, whichever was most beneficial at any given time. Instead, it was made a binding alternative to general ceiling price regulation; producers were prevented from collecting general ceiling prices when those general ceilings were increased to a level above the certificated individual price.

Making the option a binding alternative was prudent and fair economic policy. As a rational economic person, the producer looked at future expected production, future expected costs, and determined what the future expected revenues would have to

be for the present value of the project to be positive. The producer then applied for a resulting rate, greater than the current area or national ceiling rate, that the producer found was economically sufficient to induce the proposed drilling. No other incentive for drilling and production was therefore necessary. Since the basis of the producer's choice was that the specified price was sufficient and no other incentive was needed, the choice was binding against future price increases that by definition were deemed unnecessary. The only express exception is section 2.75(f). This permitted the producer to make an NGA § 4(d) rate increase filing pursuant to the specified contract escalation provisions. The section 2.75(m)(1) waiver would not operate to preclude such a rate increase filing.[6]

Use of the waiver prior to the NGPA supports the view that the waiver was intended to broadly waive future rate increases. In *Ecee, Inc. v. FPC*, 526 F.2d 1270 (5th Cir.), *cert. denied*, 429 U.S. 867, 97 S.Ct. 176, 50 L.Ed.2d 147 (1976), one question was whether the scope of the waiver was broad enough to preclude filings for the new FPC national ceiling rates, which were higher than the prevailing FPC area ceiling rates.

This Court upheld the Commission's position that the waiver precluded collection of the national ceiling rates. *See also Public Service Commission v. FERC*, 589 F.2d 542, 561–62 (D.C.Cir.1978).

Both the national ceiling rates and the NGPA ceiling prices are ceiling rates of general applicability. *Pennzoil v. FERC*, 645 F.2d 360, 382 (5th Cir. 1981). The Commission's past flexible use of the waivers to broadly encompass national ceiling rates justifies a similar flexible reading to encompass NGPA ceiling rates. As with the FPC regulation dealing with area rate clauses, the intent of the optional procedure waiver condition seems to have been to deal with federal ceiling prices, and not with a particular type of price (NGA rates) or a ceiling price from a particular source (Commission-prescribed rates). *See generally Pennzoil*, 645 F.2d at 382–83. Accordingly, a holder of an optional procedure certificate whose gas remains within NGA jurisdiction is precluded under that certificate from making a rate increase filing pursuant to NGA § 4. He may collect only the optional procedure rate, which precludes collection of any higher ceiling price, including any inflation adjustment under section 104.[7]

---

6. In addition to the express exception to the waiver in § 2.75(f), there is also special relief outside the optional procedure. This special relief is available under 18 C.F.R. § 1.7(b), which provides for petitions for the waiver of Commission rules promulgated under the NGA. *See* part V of this opinion, *infra*.

7. Petitioner Columbia argues that, in violation of fundamental fairness under the due process clause of the fifth amendment, FERC has subjected optional procedure certificate holders to an ex post facto change in the rules governing the optional pricing procedure, specifically by imposing a broader waiver than what § 2.75 required petitioners to waive at the outset. This argument, however, proceeds on the assumption that § 2.75(m)(1) did not require waiver of the right to file for all future price increases, including statutory ones, but was instead limited only to price increases from area or nationwide rate proceedings under the NGA. That assumption is one of the crucial issues in this case. Since this Court concludes that § 2.75(m)(1) required a waiver of the right to make rate increase filings under NGA § 4 for any rate increase regardless of its source, there

is no issue of retroactive application of a new standard to regulated entities.

Columbia and the Pogo, Pennzoil, and Tenneco petitioners further argue that the Commission has unlawfully discriminated against optional procedure certificate holders by allowing producers with gas certificated at area or national rates to collect higher NGPA ceiling prices pursuant to existing or amended contractual authority, and to make a blanket affidavit filing, pursuant to that contractual authority, to collect the NGPA monthly inflation adjustment to the NGPA ceiling prices. They rely on references in certificates to area or national rate regulations to argue that those certificates are conditioned to prohibit collection of any rate in excess of the area or national ceiling rate, and that FERC has unexplainably not claimed that these bar collection of NGPA rates. The certificate is only an authorization to sell, and it is the contract, whose operation may be modified or conditioned upon the issuance of the certificate, that authorizes the collection of prices. The issuance of the optional procedure certificate was conditioned upon waiver of the right to change the rate authorization. Therefore, it is not the certifi-

III. *The Scope of the Waiver in Columbia's Optional Procedure Certificate*

Petitioner Columbia additionally argues that its particular certificates are conditioned with a waiver expressly limited to price increases authorized by the Commission in area or national rate proceedings under the NGA. It further argues that the express condition language embodies the scope and intent of section 2.75(m)(1).

Columbia's optional procedure certificates were subject to express conditions imposed by an Administrative Law Judge (ALJ) and approved by the Commission. The ALJ's initial decision in part provided:

> Notwithstanding any provision of any contract for sale and delivery of natural gas, neither certificate-holder, nor any successor in interest thereof, shall exercise or seek to exercise any right to any increase in price for natural gas under section 4 of the Natural Gas Act with respect to the contract certificated herein, other than the [approved fixed annual price escalations and the adjustment for Btu content], by reason of any increase of

rates authorized by the Commission in area- or nation-wide rate decisions applicable to the same geographical pricing area as the pricing area of the production under the certificates herein issued; *provided*, however, that the provisions of this subparagraph [of the order] shall terminate and be of no force and effect if the Commission amends its regulations to authorize such increases in price. (Emphasis in original.)

Specific language concerning waiver of the right to file for future rate increases ordinarily was not necessary because acceptance of the certificate constituted unconditional agreement to the section 2.75(m)(1) waiver. These conditions were imposed because Columbia's contracts contained area rate clauses, an indefinite pricing clause that section 2.75(f) designated as impermissible for contracts submitted under the optional procedure. These contracts were accepted for filing because Columbia and the other applicants involved agreed to waive the operation of those clauses.

---

cate itself, but the condition imposed upon its issuance, that differentiates optional procedure certificates from all others. Although petitioners merely assert the existence of these conditions for gas certificated at area or national rates, this Court will assume without deciding that such certificates were conditioned to prohibit collection of rates in excess of the applicable area or national ceiling rate. No discrimination exists, however, because such references are not to be literally and strictly interpreted, but instead, as this Court makes clear in part III of this opinion, *infra*, should generally be flexibly interpreted to mean federal ceiling prices of general applicability.

Petitioner Texas Gas Exploration also argues that FERC has unlawfully discriminated against optional procedure certificate holders. Texas Gas points to FERC's treatment of minimum rate certificate holders, which in Order No. 64 are permitted to collect the NGPA § 104 inflation adjustment. The minimum rate was an exercise of the Commission's narrow authority to abrogate existing contractual arrangements if the contract price is so low as to adversely affect the public interest, as when it might impair the financial ability of the seller to continue its service, cast upon other consumers an excessive burden, or be unduly discriminatory. *In re Permian Basin Area Rate Cases*, 390 U.S. 747, 820–22, 88 S.Ct. 1344, 1387–88, 20 L.Ed.2d 312 (1968). This is the only case in which the general rule—that estab-

lishment of ceiling prices does not constitute authority to collect the ceiling—does not apply, a very narrow exception based upon unequivocal public necessity. *See id.; Pennzoil*, 645 F.2d at 379–80. Minimum rates, incorporated and carried forward by NGPA § 104, are adjusted for inflation by the NGPA. Unlike optional procedure gas, minimum rate gas is not precluded from receiving the NGPA inflation adjustment because the minimum rate order provides the authority for its collection.

The Pogo, Pennzoil, and Tenneco petitioners also argue that the Commission has unlawfully discriminated against optional procedure certificate holders whose new offshore reservoir gas qualifies for NGPA § 102(d). Petitioners point to optional procedure certificate holders whose gas qualifies for NGPA § 102(c)(1)(C), which deals with new onshore reservoirs, and who are not denied the § 102 price. The discrimination in this case must be laid ·at the doorstep of Congress. Section 601(a)(1)(B) removes from NGA jurisdiction gas that qualifies for NGPA § 102(c), but does not remove gas qualifying for § 102(d). Such discrimination may be a relevant factor for the Commission's decision to grant or deny specific relief under 18 C.F.R. § 1.7 from the waiver condition, but it does not show that the Commission is acting arbitrarily or capriciously.

Relying on the language of the ALJ as supportive of its position, Columbia attempted to amend its contracts underlying the optional procedure certificates to provide for collection of NGPA ceiling prices. The Commission rejected Columbia's interpretation of the ALJ's certificate condition. The Commission reasoned on the basis of Order No. 64 that the certificate condition precluded Columbia from collecting NGPA ceiling prices that were higher than the certificated price.

■ Like an agency's interpretation of its own regulation, an agency interpretation of conditions imposed by the agency on a certificate holder is entitled to deference on judicial review and will be overturned only if arbitrary, capricious, or clearly erroneous. *See Seaboard Coast Line Railroad v. United States*, 599 F.2d 650, 652 (5th Cir. 1979); *Chem-Haulers, Inc. v. ICC*, 594 F.2d 166, 168 (5th Cir. 1979). This Court upholds the Commission's interpretation of Columbia's certificate conditions as disallowing any future filings for rate increases.

■ Columbia's argument relies on the ALJ's explicit reference to increases in area or national rates. Section 2.75(m)(1) does not contain any similar reference. As with area rate clauses, references in certificates to area or national rates should not be literally and strictly limited to ceiling prices promulgated by the Commission under the NGA, but instead should be flexibility interpreted to include federal ceiling prices of general applicability, whether prescribed by Congress or the Commission, unless per-

suasive evidence of a narrower intent shows otherwise. *See Pennzoil*, 645 F.2d at 389–90 (reference to area rates can reasonably be interpreted to mean ceiling rates of general applicability). *See also Coca-Cola Co. v. Atchison, T. & S. F. Railway*, 608 F.2d 213, 221 (5th Cir. 1979) (strict construction against drafter of tariff not justified if it ignores an alternative, reasonable construction that conforms to practical application and the intent of the drafters).[8]

In this case, the evidence persuades this Court that the ALJ's condition, like the waiver condition in section 2.75(m)(1), encompasses federal ceiling prices generally. The Commission approved the ALJ's finding that, as conditioned, the certificates applied for would be "in conformity with section 4 of the Natural Gas Act ... and the regulations of the Commission thereunder, 18 CFR § 2.75." Therefore, the discussion in part II of this opinion concerning the intended scope of the section 2.75(m)(1) equally applies to the ALJ's specific condition.[9] Most importantly, however, the condition imposed by the ALJ was not meant to simply rephrase the entire scope of section 2.75(m)(1), but instead was meant to specifically override the area rate clauses in the contracts in accordance with the waiver of the area rate clauses agreed to in the application for the certificates. This is borne out by the first line of the condition, "[n]otwithstanding any provision of any contract," and the ALJ's prior statement in the initial decision that the certificates would be conditioned upon waiver of the rights of the applicants to price increases

---

8. The same is true for Commission references to area rate proceedings in Order Nos. 455 and 455–A, which established the optional procedure alternative, and for judicial references to area or national rate proceedings in cases describing the optional procedure alternative, *see, e. g., Public Serv. Comm'n v. FERC*, 589 F.2d 542, 562–63 (D.C.Cir.1978); *Pennzoil Offshore Gas Operators, Inc. v. FPC*, 560 F.2d 1217, 1219 (5th Cir. 1977); *Moss v. FPC*, 502 F.2d 461, 470 (D.C.Cir.1974), *aff'd in part, rev'd in part and remanded*, 424 U.S. 494, 96 S.Ct. 1003, 47 L.Ed.2d 186 (1976). At the time the optional procedure was established, and at the time

these courts were considering various issues arising under the optional procedure, the area or national rate proceedings were the mechanism for setting general ceilings.

9. Columbia points to no evidence other than the references to area or national rates in the ALJ's initial decision, in Order Nos. 455 & 455–A, and in various judicial decisions dealing with the optional procedure. Essentially, Columbia's position is that the ALJ's language is plain and therefore should be literally interpreted. This interpretive approach is inappropriate for the reasons already stated in this opinion.

under the area rate and price redetermination provisions of their contracts.[10]

Columbia also relies on the ALJ's language that the condition would terminate and be of no force and effect if the Commission amended its regulations to authorize the otherwise prohibited price increases. This proviso was necessary so that the certificate holder could take advantage of any Commission repeal of the section 2.75(m)(1) waiver condition or any congressional repeal of producer rate regulation under the Natural Gas Act. This is similar to applications for optional procedure certificates that often included language that the waiver would be effective during the term of the optional procedure certificate, "absent change in the Commission's Regulations or in the Natural Gas Act." This language would permit the certificate holder to take advantage of any repeal of the optional procedure certificate conditions by either the Commission or Congress. Contrary to the thrust of petitioners' argument, it cannot undo the conditions simply because of *any* changes in Commission regulations or the statutory framework, no matter how unrelated to the certificate conditions those changes may be. This brings us to the second major issue in this case—the effect of the NGPA.

IV. *The NGPA and Optional Procedure Certificate Waivers*

Petitioners argue that the NGPA repeals either the optional procedure certificate waiver condition for existing certificates or the NGA § 4 filing requirement. Petitioners' initial argument runs as follows. NGPA §§ 102(d) and 104 prescribe maximum lawful inflation-adjusted prices that "shall apply" to sales of gas qualifying under those respective sections. NGPA § 101(b)(5) provides that if any gas qualifies under more than one NGPA pricing section

or exemption from price ceilings, "the provision which could result in the highest price shall be applicable." Petitioners point to the language "shall apply" in the pricing sections and the language "shall be applicable" in section 101(b)(5). They maintain that this "mandatory language" repeals the waiver condition with regard to optional procedure gas that could qualify for section 102(d), and permits collection of at least the inflation adjustment for optional procedure gas that does not so qualify and therefore remains under section 104.

Petitioners further argue that even if the NGPA does not repeal the waiver condition, it repeals, or at least reduces to an empty formality, the requirement that a seller subject to the Commission's jurisdiction under the NGA must make a rate increase filing pursuant to NGA § 4(d) to collect a higher rate. The crux of this argument is that the purpose of the filing requirement is to enable the Commission to determine the lawfulness of the proposed rate increase, and since NGPA § 601(b) deems its statutory ceiling prices to be just and reasonable for purposes of the NGA, there is nothing left for the Commission to decide.

As with agency interpretations of its own regulation or certificates issued by it, an agency's interpretation of its own statute is generally given deference, *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1963), unless that interpretation is clearly wrong or unreasonable, *Coca-Cola Co. v. Atchison, T. & S.F. Railway*, 608 F.2d 213, 222 (5th Cir. 1979). This Court concludes that FERC's interpretation—that the NGPA repeals neither the waiver condition for existing certificates nor the NGA § 4 filing requirement—is not clearly wrong or unreasonable.

Contrary to petitioners' argument, congressional prescription of ceiling prices for

---

10. In accordance with this Court's recent opinion in *Pennzoil*, 645 F.2d 360, Columbia may assert existing contractual authority to collect NGPA ceiling prices on the basis of its area rate clauses, subject to FERC or judicial resolution of any challenge to that assertion. Assuming that its area rate clauses do constitute con-

tractual authority to collect NGPA prices, the certificate condition precludes such collection, regardless of the scope of § 2.75(m)(1), since Columbia agreed to waive, and the certificate was conditioned to preclude, the right to price increases under the area rate clause.

all gas does not repeal the certificate condition. The NGPA maximum lawful prices are *ceiling* prices. This means that, as this Court recently made clear in *Pennzoil*, 645 F.2d at 379–80, the NGPA does not mandate that the ceiling rate be charged and collected, only that the rate charged and collected cannot be in excess of the statutorily prescribed maximum. Petitioners are attempting to convert the NGPA from a scheme of ceiling prices to one of controlled prices—a price that is both a price ceiling and a price floor. In *Pennzoil*, this Court dealt with one type of legal barrier to collection of a higher ceiling price—the issue of lack of contractual authority to collect the ceiling price. A seller's ability to charge and collect rates is circumscribed not only by the provisions of his contract, but also by any limitations imposed as a condition to issuance of a certificate under the NGA. The optional procedure certificate waiver condition is another legal barrier to collection of a higher ceiling price.[11]

Petitioners argue that it is inappropriate to distinguish between qualifying for a particular price under the NGPA and collection of that price. They point to NGPA § 101(b)(9) as the only exception to the otherwise mandatory requirement in section 101(b)(5) that the highest maximum lawful price that the gas can qualify for is the applicable maximum lawful price for that gas. Petitioners are in effect invoking that hoary maxim of statutory interpretation *expressio unius est exclusio alterius*, that is, statutory specification of one exception to a general rule excludes other exceptions not expressed.

This maxim has no application in this case because section 101(b)(9) is merely a corollary to the concept of the ceiling price.

*See Pennzoil*, 645 F.2d at 374, 375. The significance of section 101(b)(5) is that the *highest ceiling* the gas qualifies for will be the *applicable ceiling*, and thus is merely a rule of construction when gas qualifies for more than one category. The establishment of ceilings, including the establishment of a particular ceiling among a choice of applicable ceilings, does not constitute authority to collect the ceiling price. *See Pennzoil*, 645 F.2d at 379–80.

Petitioners also argue that the waiver condition is a "pricing condition" or "pricing regulation" inconsistent with the NGPA and therefore is superseded by the operation of the NGPA. It is true that the optional procedure was a price-setting mechanism, and, as with all of the Commission's other producer price-setting mechanisms under the NGA, has been displaced by the NGPA so that optional procedure certificates are no longer being issued by the Commission. Existing certificates, that is, optional procedure certificates issued prior to the NGPA, present an entirely different question.

NGPA § 104 incorporates by reference and carries forward prior FPC price regulation. The optional procedure was one such pricing approach; therefore, the certificated price in an optional procedure certificate is that certificate holder's initial section 104 ceiling price. Section 104 provides that its ceiling price is to be adjusted monthly by an inflation factor. Since section 104 gas remains subject to NGA jurisdiction, the optional procedure certificate holder is unable to collect the ever-increasing section 104 ceiling price because he is disabled from making the requisite NGA § 4 rate increase filing necessary to lawfully collect a price higher than the certificated price.[12] If the

---

11. In *Pennzoil* this Court upheld the Commission regulation that provided that a seller can negotiate with his buyer for a contractual amendment authorizing collection of a higher NGPA ceiling price to cure a lack of contractual authority to collect that price. So too a producer can ask FERC for 18 C.F.R. § 1.7 relief from the operation of the § 2.75(m)(1) optional procedure certificate waiver.

12. Petitioner Columbia points to references in the legislative history to special relief pricing to support the argument that the § 104 inflation adjustment must apply to the optional procedure certificate price. Representative Dingell's explanatory statement of the conference agreement only relates that NGPA § 104 "deals with area rates, national rates of several vintages, and special relief pricing." 124 Cong.Rec. H13113 (daily ed. Oct. 14, 1978). A report on an earlier version of the NGPA more helpfully

optional procedure certificate holder's gas qualifies for incentive pricing under section 102(d), 107(c)(5), or 108, under the rule of section 101(b)(5) the highest ceiling price becomes the applicable ceiling price. Again, however, since gas qualifying under sections 102(d), 107(c)(5), and 108 is not removed from NGA jurisdiction by NGPA § 601(a)(1)(B), an optional procedure certificate holder whose gas remains subject to the NGA cannot collect those higher incentive prices because he is precluded by the terms of the certificate from filing under NGA § 4 for those prices. Rather than superseding the optional procedure certificate pricing and waiver conditions, the NGPA instead carries those conditions forward.[13]

This Court therefore holds that the NGPA does not repeal the waiver condition for existing optional procedure certificates. This brings us to the question of whether the NGPA expressly or impliedly repeals the NGA § 4 rate increase filing requirement.

There is, of course, no express repeal of the filing requirement itself. The NGPA never mentions the NGA § 4 filing requirement. The only express repeal possible is for gas that formerly was but now is no longer subject to NGA jurisdiction, pursuant to section 601(a)(1). In essence, NGPA § 601 curtails NGA jurisdiction, and then preserves and maintains that curtailed NGA jurisdiction.[14] The procedural re-

specified that FPC "special relief pricing" was after the fact, requiring a cost justification for receipt of a higher price to assure recovery of excessive costs, but that the proposed bill's approach to high cost gas differed from the "optional pricing approach" by giving beforehand incentives, thus avoiding the regulatory burdens that limited the utility of optional pricing. H.R.Rep.No.543, 95th Cong., 1st Sess. 46 (1977). These two items of legislative history thus support the inclusion of the optional procedure certificate price within § 104. As an initial § 104 ceiling price, that ceiling is adjusted monthly for inflation by § 104(b)(1)(A)(ii). The certificate holder's waiver, however, still precludes collection of the inflation-adjusted ceiling once it is above the certificated price.

**13.** Petitioners argue that the lack of any express statutory provision dealing with optional procedure certificates, and the lack of any discussion of those certificates in the legislative history, supports the view that Congress did not intend the singular treatment of optional procedure sales in Order Nos. 64 and 64–A. Such silence is not supportive of the petitioners, however. It would take express treatment of optional procedure certificate gas for such gas to fall outside the general principles of the NGPA that continue the certificate conditions.

**14.** Section 601(a)(1)(A) provides that for purposes of NGA § 1(b) effective on December 1, 1978, the provisions of the NGA and the Commission's jurisdiction under the NGA shall not apply to natural gas which was not "committed or dedicated to interstate commerce" as of November 8, 1978, solely by reason of any first sale of such natural gas. Section 601(a)(1)(B) provides that effective beginning on December 1, 1978, for purposes of NGA § 1(b), the provisions of the NGA and the Commission's jurisdiction thereunder shall not apply solely by

reason of any first sale of natural gas that is committed or dedicated to interstate commerce as of November 8, 1978, and which is high-cost natural gas under § 107(c)(1) through (4), new natural gas under § 102(c), or natural gas produced from any new onshore production well under § 103. Section 2(18), 15 U.S.C.A. § 3301(18), defines the term "committed or dedicated to interstate commerce." Section 2(18)(B) provides definitional exclusions from the general definition in § 2(18)(A). The exclusion most controversial and difficult to fathom is § 2(18)(B)(iii), the so-called "Southland" exclusion. See generally Note, *The Meaning of the* Southland *Exclusion—Complexity and Ambiguity in the Natural Gas Policy Act*, 58 Texas L.Rev. 435 (1980). Gas dedicated within the meaning of the NGA that nonetheless qualifies for exclusion from the NGPA definition of "committed or dedicated" is removed from NGA jurisdiction on December 1, 1978, by NGPA § 601(a)(1)(A). Gas that is dedicated within the meaning of the NGA and that does not qualify for exclusion from the NGPA's definition of "committed or dedicated" but does qualify for one of the specified incentive price categories listed in § 601(a)(1)(B) is also removed from NGA jurisdiction on December 1, 1978, by NGPA § 601(a)(1)(B). Sales of gas into interstate commerce on or after December 1, 1978, will no longer serve to dedicate the gas under the NGA because of the operation of § 601(a)(1)(A). It is in this rather complex manner that NGA jurisdiction is initially curtailed and then preserved by the NGPA.

Petitioner Columbia argues that NGPA § 601 simply preserves the NGA requirement that prior to cessation of dedicated gas deliveries the producer must seek abandonment authority and that conditions of service be maintained. The only support given for this assertion is that § 601 refers only to NGA § 1(b) and fails to

quirements of the NGA otherwise continue unaffected by the passage of the NGPA. Being subject to the NGA § 4(d) rate increase filing requirement is simply one consequence of coming within NGA jurisdiction. The optional procedure certificate waiver is a waiver of the right to make the necessary NGA § 4 rate increase filing. Gas under an optional procedure certificate that is no longer within NGA jurisdiction by virtue of NGPA § 601(a)(1) is no longer subject to the requirement that any rate increase filing be made. This gas is therefore freed from the impact of the waiver condition and such a certificate holder is free to collect the NGPA ceiling price if no other legal barrier prevents collection of that maximum lawful price. Indeed, in the orders on review the Commission expressly stated that the waiver condition precluded the collection of NGPA rates only for gas that remained subject to NGA jurisdiction, and not for gas removed from that jurisdiction pursuant to the NGPA.

Aside from the elimination of the filing requirement for gas removed by section 601 from NGA jurisdiction, there is no express repeal of the NGA filing requirement for optional procedure certificate gas that remains within NGA jurisdiction. *See Pennzoil*, 645 F.2d at 380–82, 390, 393 (recognizing that NGA § 4 continues to apply to gas not qualifying for NGPA § 601(a)(1)). That leaves the issue of implied repeal.

 Repeal by implication arises when there is a plain repugnancy between the operation of two acts or their provisions, but repeals by implication are not favored, and the two acts or provisions

thereof are to be given effect consistent with each other whenever possible. *See United States v. Tynen*, 11 Wall. 88, 78 U.S. 88, 92, 20 L.Ed. 153 (1870). When interpreting and construing two acts that affect one particular subject matter or area, the court must attempt to reconcile the acts, if possible, so as to produce a symmetrical whole. *Panhandle Eastern Pipeline Co. v. FPC*, 359 F.2d 675, 679 (8th Cir. 1966) (construing NGA with the Helium Act). There is no repugnancy between the NGPA and the NGA § 4 rate change filing requirement. Promulgation of NGPA ceiling prices replaces only the prior FPC ceilings, and does not replace other price-related procedural provisions for gas remaining within NGA jurisdiction.

Petitioners make much of the significance of the filing requirement with regard to Commission rate regulation. They contend that the significance of the NGA § 4(d) filing requirement has been reduced to a perfunctory, information-type filing to inform the Commission that the producer intends to collect the highest NGPA-established rate for which the sale qualifies. In other words, petitioners argue that the NGPA has reduced NGA § 4 to a hollow procedure.

The filing requirement does serve an integral function with regard to rate-setting and rate review for pipeline rate regulation. *See generally United Gas Pipe Line Co. v. Mobile Gas Service Corp.*, 350 U.S. 332, 342, 76 S.Ct. 373, 379, 100 L.Ed. 373 (1956). Once the Commission had gotten away from individual producer regulation to

refer to NGA §§ 4 and 5, which deal with pricing. Section 601, however, also does not refer to NGA § 7, which deals with certification and abandonment. Columbia erroneously states that NGA §§ 4 and 5 deal with pricing jurisdiction, when they in fact deal with pricing authority for gas over which the Commission has jurisdiction under NGA § 1(b). Accordingly, § 601 limits only FERC jurisdiction under NGA § 1(b), and it requires some other limitation in the NGPA to circumscribe or replace FERC's authority under the NGA to regulate gas remaining within its NGA jurisdiction. Columbia's argument that the "vestiges" of NGA regulation under NGPA § 601 are limited to

maintenance of dedicated service therefore cannot stand. Price-setting and price-related provisions must be repealed by some other provision. As a price-related provision, the NGA filing requirement is not displaced by the NGPA's price-setting provisions. Nor does the NGPA provide any other provisions that would displace the filing requirement. Therefore, while the NGPA supersedes the continued availability of the optional pricing procedure for new gas, it does not displace all price-related provisions in the NGA, nor for that matter the optional procedure waiver for existing certificates.

group ratemaking under its area rate approach, and later its national rate approach, the significance of the NGA § 4 rate increase filing requirement for producer rate regulation shifted away from the lawfulness of the proposed rates and more on to whether the producer qualified for the increase and whether there were other legal barriers to the collection of the proposed rate increase. Since the Commission had already determined when it set new area or national ceiling rates that those rates were just and reasonable, it was a simple matter to determine, when a producer filed for a rate increase in accordance with the increase in the applicable area or national ceiling rate, whether the proposed rate increase was lawful. Since NGPA rates are just and reasonable ceiling rates of general applicability, as were area and national ceiling rates, there is no significant difference in the administrative function with regard to the necessity for a producer subject to the NGA to make the NGA § 4 rate increase filing. The NGA filing requirement accordingly survives the NGPA's displace-ment of Commission rate-setting authority.[15]

Petitioner Columbia then goes on to argue, however, that FERC has recognized that NGA § 4 has been reduced to nothing more than an administrative notice requirement. It points to FERC Order No. 15,[16] which provides that producers may file a one-time blanket affidavit of authority to file for and collect the NGPA monthly inflation adjustments to the NGPA ceiling prices. The basis of Order No. 15, however, was that once a producer has established the basic authority to collect the inflation-adjusted ceiling price, it would impose needless administrative burdens and costs on producers (and the Commission) to require subsequent monthly rate increase filings. Order No. 15 thus cannot stand as support for, and in fact cuts against, the argument that the mandated rate increase filings are no longer a necessary requisite to collecting a higher ceiling price. Although subsequent filings due solely to the statutory inflation adjustment have been made unnecessary, the initial filing to establish au-

15. Petitioners attempt to make much of the change in the Commission's ratemaking functions that the NGPA effectuates. The Commission no longer engages in rate-setting for producer sales except in a few specified instances, and then only to increase the ceiling price above the statutory level. NGPA §§ 104(b)(2), 106(c), 107(b), & 109(b)(2), 15 U.S.C.A. §§ 3314(b)(2), 3316(c), 3317(b), & 3319(b)(2). Except when setting prices in excess of the statutory ceilings, FERC no longer inquires into producer costs or sets permissible rates of return for producers. The focus of the inquiry shifts away from rate-setting considerations and instead is on eligibility for various pricing classifications and authority to collect the category for which the producer eventually qualifies. While the congressional reassumption of the function of setting rate levels may be relevant to other issues, for example FERC's overall responsibility to consumers, see *Pennzoil*, 645 F.2d at 378–79, it has no bearing on the continuation of the express procedural requirement of the NGA § 4 rate increase filing. That Congress and not the Commission established the new, higher ceiling prices, and that these ceiling prices are deemed just and reasonable, by itself does not negate the continuing requirement to comply with the NGA rate change procedures.

Petitioners also argue that because the basic circumstances surrounding the "bargain" be-tween optional procedure certificate holders and the Commission were materially and substantially changed by NGPA producer pricing, the producers should no longer be bound by the old bargain that does not fit the new circumstances. This argument must fail. The NGPA does not materially change the circumstances in which the "bargain" is being performed. The NGPA instead continues price ceilings with "vintaging" to prevent windfall profits to holders of older, cheaper reserves. *Pennzoil*, 645 F.2d at 372. A contract should be interpreted in light of the changed circumstances to accomplish what the parties intended. *Pennzoil*, 645 F.2d at 388. The parties intended that the individual producer receive a firm, individual price for his gas as an alternative to general price ceilings. The intention of the parties to prevent switching to general price ceilings is effectuated by preventing optional procedure certificate holders still subject to the NGA § 4 rate change filing requirement from collecting higher NGPA ceiling prices absent relief under 18 C.F.R. § 1.7 from the waiver condition.

16. FERC Order No. 15, Amendments to the Commission's Regulations Relating to Independent Producer Filing Requirements (Nov. 17, 1978), *modified*, Order No. 15–A (Dec. 28, 1978).

thority to collect the ever-increasing ceiling is still required and cannot be made by the optional procedure certificate holder because of the waiver.

## V. Special Relief from the Optional Procedure Certificate Waiver

Petitioners argue that the Commission is frustrating the incentive purpose of the NGPA. The Commission's position precludes charging the NGPA § 102(d) price for optional procedure gas from new reservoirs on old offshore federal leases. They allege that currently it is economically impossible for a producer to undertake costly offshore drilling at the optional procedure certificate price. It is further alleged that denial of NGPA incentive prices to one or more working interest owners, because that working interest owner is an optional procedure certificate holder, removes potential participants from exploratory offshore drilling enterprise and focuses relatively more risk on the remaining producers as they decide whether to proceed with drilling.

Throughout their briefs petitioners have overbroadly relied on the incentive objective of Congress to support their arguments for wholesale relief from section 2.75(m)(1) —wholesale relief in the sense of convincing this Court that the scope of the waiver is narrow or that the NGPA repeals the waiver or the filing requirement. The NGPA did intend to provide incentives for offshore development. At the same time, the NGPA did not intend indiscriminate application of the incentive. Rather, it reflects a careful balance between two statutory principles: (1) incentive pricing for new gas and price controls on intrastate gas to ensure adequate supplies in the interstate market, and (2) maintenance of NGA price controls on old gas to prevent unnecessary price increases. Note, *Legislative History of the Natural Gas Policy Act: Title I*, 59 Texas L.Rev. 101, 116 (1980).

Congress recognized that incentives need to be carefully tailored to reach only gas that needs an incentive and should not be available to gas that needs no incentive. *See Pennzoil*, 645 F.2d at 367, 372; Note, *supra*, at 119, 124. This was also the basis of the FPC's use of ceiling prices with "vintaging" to prevent windfall profits to holders of older, cheaper reserves,[17] which is continued in the NGPA pricing scheme. *See Pennzoil*, 645 F.2d at 372; Note, *supra*, at 111–12 & n.70, 119–20. The optional procedure certificate is evidence that this gas needs no incentive—in accepting the optional procedure certificate the producer committed himself to the gas supply project on the basis of a firm price stated in the certificate.

Although the producer deemed the certificate price sufficient to induce the drilling at the time he sought the certificate, circumstances may have changed so that the certificate pricing condition is frustrating particular development efforts on the Outer Continental Shelf. If an incentive is in fact necessary for a particular project to go forward, specific relief would be appropriate. This relief is available under 18 C.F.R. § 1.7(b), which provides for waivers from any Commission rule or regulation promulgated under the NGA. Under this regulation, a producer could apply to the Commission for removal of the section 2.75(m)(1) waiver condition.[18] Giving specific relief

---

17. In other words, if an incentive price covers gas that would be produced even in the absence of that incentive, the producer receives a windfall. *See* H.R.Rep.No.543, 95th Cong., 1st Sess. 40–41 (1977). Put differently, the increased price should be given only if it will call forth an increased supply of gas. *See Mobil Oil Corp. v. FPC*, 417 U.S. 283, 318, 94 S.Ct. 2328, 2350, 41 L.Ed.2d 72 (1974).

18. The grant of such relief is within FERC's equitable discretion. Denials of such relief are reviewable by the appellate courts under the abuse of discretion standard. In reviewing such denials, the scope of review is limited to ascertaining whether there is a rational basis for and substantial evidence supporting the agency's determination. *Accord, Estate of French v. FERC*, 603 F.2d 1158, 1163 (5th Cir. 1979) (special relief from refund obligation); *Jarecha v. INS*, 417 F.2d 220, 225 (5th Cir. 1969). The agency must of course set out clearly the ground that forms the basis for the denial of discretionary relief so that appellate courts can undertake this review. *Jarecha*, 417 F.2d at 225.

from the section 2.75(m)(1) waiver on a case-by-case basis when that relief is appropriate is a balanced approach between giving and withholding incentives consistent with the twin principles of the NGPA. In its equitable discretion, FERC can allow those projects adversely affected by the certificate condition to proceed, while preventing producer windfalls when the optional procedure certificate is not hindering further development.

### VI. *Conclusion*

This Court holds that the optional procedure certificate waiver condition precludes such certificate holders from filing for NGPA ceiling prices to the extent that the

gas so certificated remains within NGA jurisdiction. Further, this Court holds that the NGPA does not repeal either the NGA § 4(d) filing requirement or the waiver condition for existing certificates. The appropriate avenue for relief from the certificate waiver condition is a petition to FERC under 18 C.F.R. § 1.7. Accordingly, the FERC orders under review are

AFFIRMED.

Some concern was expressed in comments to FERC that given the views expressed in Order No. 64, the Commission had prejudged § 1.7 petitions and would not grant them. FERC responded in Order No. 64–A with a promise to consider the petitions on their merits. This Court has every confidence that FERC will give due consideration to all petitions, and dispose of them on a rational basis consistent with the dual incentive and windfall prevention goals of the NGPA, in accordance with that promise.

The *Pogo, Pennzoil,* and *Tenneco* petitioners argue that because the § 102(d) price is available only for new reservoirs on old offshore leases, the gas by definition needs the incentive. Section 102(d), however, applies to gas produced from a reservoir that was not discov-

ered, that is, not penetrated and capable of producing in paying quantities or commercially producible, before July 27, 1976. It is therefore possible that some gas qualifying for § 102(d) was already within the package of gas that the optional procedure price was intended to bring forth. Qualifying for § 102(d) pricing is thus not the only fact that the producer must show to the Commission sufficient to justify the relief sought. Each petition will turn on its own facts; therefore, this Court leaves to FERC the determination of what additional facts supporting relief can or should be shown to the Commission. We note only that the goal is to provide relief when the optional procedure certificate pricing condition is in fact frustrating further development.