**Winston C. BABER**

v.

**UNITED STATES of America.**

**Civ. A. No. 81–4569.**

United States District Court,
E. D. Louisiana.

April 29, 1982.

## REASONS FOR JUDGMENT

DUPLANTIER, District Judge.

Plaintiff, a producer of natural gas that is sold in interstate commerce, has challenged the constitutionality of Title I of the Natural Gas Policy Act of 1978, 15 U.S.C. § 3301, et seq. (the NGPA), on the grounds that it is arbitrary and discriminatory in violation of the Fifth and Fourteenth Amendments to the United States Constitution. Defendant has moved to dismiss the complaint, or in the alternative, for summary judgment. Apparently, the precise questions presented are of first instance.

legality of the seniority system as applied to them."

The NGPA was enacted on November 9, 1978. Previously, the maximum price at which gas could be sold in the interstate market was regulated under the Natural Gas Act of 1938, 15 U.S.C. § 717, *et seq.* (the NGA). The new statute generally adopted an incentive-based approach to rate-setting for gas production, permitting substantially higher prices for "new" gas than was previously permitted under the NGA. *See Pennzoil Co. v. Federal Energy Regulatory Commission*, 645 F.2d 360, 367 (5th Cir. 1981), *cert. denied,* —— U.S. ——, 102 S.Ct. 1000, 71 L.Ed.2d 293 (1982). In discussing the incentive objective of Congress, the Fifth Circuit has noted:

> [T]he NGPA did not intend indiscriminate application of the incentive. Rather, it reflects a careful balance between two statutory principles: (1) incentive pricing for new gas and price controls on intrastate gas to ensure adequate supplies in the interstate market, and (2) maintenance of NGA price controls on old gas to prevent unnecessary price increases.

*Columbia Gas v. Federal Energy Regulatory Commission*, 651 F.2d 1146, 1160 (5th Cir. 1981).

The rate ceiling, or price control, presently imposed upon plaintiff's gas under the NGPA is set forth in 15 U.S.C. § 3314. Section 3314 applies to "natural gas committed or dedicated to interstate commerce on November 8, 1978, and for which a just and reasonable rate under the Natural Gas Act was in effect on such date." It is undisputed that plaintiff's gas, which was discovered in 1973 and sold in interstate commerce shortly thereafter, was committed or dedicated to interstate commerce on November 8, 1978. It is also undisputed that section 3314 imposes a lower rate ceiling upon plaintiff's gas than other NGPA "incentive-based" provisions impose upon other categories of gas of identical quality.[1] Because there is no genuine issue as to any material fact in this litigation, it is appropriate for this court to determine whether the moving party is entitled to a judgment as a matter of law. *See* Fed.R.Civ.P. 56(c).

■ It is well settled that price control is unconstitutional if it is arbitrary, discriminatory or demonstrably irrelevant to a policy Congress is free to adopt. *See In re Permian Basin Area Rate Cases*, 390 U.S. 747, 769–70, 88 S.Ct. 1344, 1361, 20 L.Ed.2d 312, 337 (1968) [hereinafter cited as *Permian*]. In *Permian*, the United States Supreme Court considered the constitutionality of a pricing scheme that permitted differences in price for simultaneous sales of gas of identical quality based upon the date the gas was first dedicated to the interstate market and its method of production. The rationale for the *Permian* rate schedules is the same as the rationale for the pricing scheme under attack in the case *sub judice,* i.e., that price should be employed as a tool to encourage the production of appropriate supplies of natural gas. *See* 390 U.S. at 760, 88 S.Ct. at 1356, 20 L.Ed.2d at 332. Except for the fact that the pricing scheme in *Permian* was created by the Federal Power Commission (the Commission) pursuant to authority delegated to it by Congress under the NGA rather than by Congress itself, the situation before the Supreme Court was virtually indistinguishable from that presented in the case at bar. For this reason, the ruling of the Court in *Permian* is dispositive of the instant litigation. In *Permian*, the Court stated:

> The Commission may ... employ price functionally in order to achieve relevant regulatory purposes; it may, in particu-

---

1. Defendant's Statement of Uncontested Material Facts contains the following paragraph:
   8. The price ceiling contained in Section [3314] of the statute is lower than the ceilings allowed in certain other sections of the statute which apply to other categories of gas which may be of the same quality as Plaintiff's gas.
   Plaintiff regards defendant's use of the words "may be" in the above statement as presenting a genuine issue of material fact with respect to the identical qualities of various categories of gas under the NGPA. In the context of this litigation, we construe defendant's use of the words "may be" as synonymous with the word "are" and accept plaintiff's contention that the relevant categories of gas are of identical quality as an uncontested fact.

lar, take fully into account the probable consequences of a given price level for future programs of exploration and production. Nothing in the purposes or history of the Act forbids the Commission to require different prices for different sales, even if the distinctions are unrelated to quality, if these arrangements are "necessary or appropriate to carry out the provisions of this Act." § 16, 15 U.S.C. § 717o. We hold that the statutory "just and reasonable" standard permits the Commission to require differences in price for simultaneous sales of gas of identical quality, if it has permissibly found that such differences will effectively serve the regulatory purposes contemplated by Congress.

The Commission's responsibilities include the protection of future, as well as present, consumer interests. It has here found, on the basis of substantial evidence, that a two-price rate structure will both provide a useful incentive to exploration and prevent excessive producer profits. In these circumstances, there is no objection under the Natural Gas Act to the price differentials required by the Commission.

390 U.S. at 797–98, 88 S.Ct. at 1376, 20 L.Ed.2d at 353–54. Surely Congress can exercise directly that authority which it can delegate to a regulatory agency.

It is easy to understand that the application of differential price ceilings to commodities of identical quality is of great concern to those, such as plaintiff, upon whom such a regulatory scheme has a significant adverse effect. However, legislative acts adjusting the burdens and benefits of economic life are presumed to be constitutional. *See Hodel v. Indiana*, 452 U.S. 314, 323, 101 S.Ct. 2376, 2382, 69 L.Ed.2d 40, 50 (1981). A court may invalidate legislation enacted under the Commerce Clause, as the NGPA was,[2] only if it is clear that there is no rational basis for a congressional finding that the regulated activity affects interstate commerce, or that there is no reasonable connection between the regulatory

means selected and the asserted ends. *See Hodel, supra.* This standard of review makes it clear that the function of this court is a limited one. The broad discretion vested in Congress would have permitted it to have selected numerous plans, so long as a reasonable connection existed between any such plan and what is clearly a permissible objective; it is not for this court to say which approach is better, or which is "fair." The Supreme Court considered the validity of a virtually identical regulatory scheme in *Permian* and held that it passed constitutional muster. This court must follow that holding and reject plaintiff's challenge to Title I of the NGPA.

For these reasons, judgment will be entered in favor of the defendant pursuant to Fed.R.Civ.P. 56(c).

**2.** *See Oklahoma v. Federal Energy Regulatory* *Commission,* 661 F.2d 832 (10th Cir. 1981).