797 F.2d 918
 NORTHWEST CENTRAL PIPELINE CORPORATION, Petitioner,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent,
The Midwest Gas Users Association, Amoco Production Company,
the Gas Service Company, the Kansas Power and
Light Company, Kansas Corporation
Commission, Intervenors.
 No. 84-1697.
 United States Court of Appeals,
Tenth Circuit.
 Aug. 5, 1986.
 
 Harold L. Talisman of Wright & Talisman, Washington, D.C. (John B. Rudolph of Hall, Estill, Hardwick, Gable, Collingsworth and Nelson, Washington, D.C., Blaine Yamagata of O'Neill and Haase, Washington, D.C., William J. Sears and John H. Cary of Northwest Central Pipeline Corporation, Tulsa, Oklahoma, with him on the briefs), for petitioner.
 A. Karen Hill (William H. Satterfield, Gen. Counsel, Jerome M. Feit, Solicitor, and Bonnie C. Cord, Atty., on the briefs), F.E.R.C., Washington, D.C., for respondent.
 Brian J. Moline, Gen. Counsel, Kansas State Corp. Com'n., Topeka, Kan., and C. Edward Peterson of Hamill, Neill & Dwyer, Mission, Kansas, filed a brief for intervenor Kansas State Corp. Com'n.
 Before HOLLOWAY, Chief Judge, LOGAN, Circuit Judge, and BRETT, District Judge.*
 LOGAN, Circuit Judge.
 
 
 1
 Petitioner, Northwest Central Pipeline Company, applied to the Federal Energy Regulatory Commission in 1976 for a "certificate of public convenience and necessity," under Sec. 7 of the Natural Gas Act, 15 U.S.C. Secs. 717-717w. Northwest needed the certificate to build and operate a natural gas pipeline running from Wyoming to its existing Kansas pipeline. The Commission issued the certificate in 1978.
 
 
 2
 The certificate contained a "minimum throughput condition," which provided that Northwest would have to calculate unit transmission costs based on a gas volume of at least ninety percent of the new pipeline's design capacity in setting customer gas rates. This was a standard certificate provision designed to ensure that customers would not bear the cost of the new pipeline if it were underused. The record shows that the Commission's primary motivation in making this condition was its concern that ongoing Wyoming gas exploration projects might not provide enough economically recoverable reserves to fill the pipeline.
 
 
 3
 Before issuing the certificate, the Commission rejected a Northwest request for a "clarification" of the minimum throughput condition. The clarification would have made the condition
 
 
 4
 "applicable only if a shortfall in deliveries results from the unavailability of sufficient volumes of gas and not due to uncontrollable events not contemplated at the time of certification."
 
 
 5
 R. I, 4157. The Commission responded by stating:
 
 
 6
 "The suggested 'clarification' is in reality an amendment. And that amendment would, we think, negate the condition intended to protect consumers. This is not to say that the condition is intended to be inflexible and binding, come what may. If and when presently unforeseeable circumstances beyond Cities Service's control make the condition unduly onerous and inequitable, it may then ---------- for appropriate relief.[4]
 
 
 7
 Id.
 
 
 8
 In the early 1980s prices for Wyoming natural gas rose sharply. Demand for all natural gas declined. Northwest now had ample gas available to fulfill the minimum throughput condition, but it could get cheaper gas elsewhere and had less need for gas overall. In 1983 Northwest filed a petition with the Commission requesting that, in light of the changed circumstances, the minimum throughput condition be deleted from the certificate. The Commission denied the request, although it granted an accompanying request to delete a requirement that Northwest build two as-yet-unconstructed pipeline compressor stations. The Commission also agreed to limit the application of the minimum throughput condition during 1983 and 1984.
 
 
 9
 Northwestern petitioned the Commission for a rehearing on the refusal to delete the condition. The petition was denied. Northwest then petitioned this court for review. We affirm.
 
 
 10
 First, assuming arguendo that Northwest can raise the issue after failing to appeal its imposition in the 1978 certificate, we have no problem upholding the power of the Commission to impose throughput conditions on certificates under Sec. 7(e) of the Natural Gas Act. See Tennessee Gas Pipeline Co. v. FERC, 689 F.2d 212 (D.C.Cir.1982); Transcontinental Gas Pipe Line Corp. v. FERC, 589 F.2d 186 (5th Cir.1979).
 
 
 11
 Northwest contends that the Commission order refusing to amend the certificate is not supported by substantial evidence, the amount necessary for us to uphold Commission findings of fact. See 15 U.S.C. Sec. 717r(b); see also 5 U.S.C. Sec. 706(2)(E) (general Administrative Procedure Act provision for "substantial evidence" review); B. Schwartz, Administrative Law Sec. 10.7 (2d ed. 1984) (discussing "substantial evidence" review). Here, however, the Commission did not make a factual finding; instead it made a discretionary decision not to amend a prior order. Such a discretionary decision is reversible only if it was "arbitrary" or "capricious." See 5 U.S.C. Sec. 706(2)(A).
 
 
 12
 Northwest argues alternatively that the Commission's discretionary decision was unreasonable. It stresses that the Commission's imposition of the minimum throughput condition was based primarily on its doubts about recovery of gas in Wyoming, and not on doubts about later marketability of the gas due to changed prices and demand. This is correct. But the Commission expressly concluded in its review that, even when the condition was first issued, it also was based on any inability of Northwest to use its pipeline fully. We find this conclusion acceptable, especially in light of the rejection of the proposed "clarification" of the condition, in which the Commission expressly stated that "difficulty in recovering natural gas at a reasonable price" would not warrant changing the condition. R. I, 4157. The Commission observed on review that the underlying policy of the condition was broad protection of utility ratepayers from underuse of the questionable new facility, placing the risks on stockholders instead. The Commission found that the recent problems with marketability of Wyoming gas fit comfortably within this underlying policy. We concur in this reasoning.
 
 
 13
 Further, even if the Commission's decision were a close call, it is entitled to deference. "Like an agency's interpretation of its own regulation, an agency interpretation of conditions imposed by the agency on a certificate holder is entitled to deference on judicial review and will be overturned only if arbitrary, capricious, or clearly erroneous." Columbia Gas Development Corp. v. FERC, 651 F.2d 1146, 1154 (5th Cir.1981); see also Udall v. Tallman, 380 U.S. 1, 16-18, 85 S.Ct. 792, 801-02, 13 L.Ed.2d 616 (1965).
 
 
 14
 Northwest contends that in several ways Commission actions have been fatally inconsistent. It argues, for example, that the Commission's decision to allow it to forego construction of two new compressors is inconsistent with its refusal to delete the throughput condition. But we view the Commission's allowance of less construction on the pipeline simply as leniency, and not as contradictory to its continued insistence on the condition. We view other Commission decisions, representing varying responses to the plight of other gas companies affected by changes in the gas market, as reasoned, case-by-case administration. We do not view the Commission's insistence on the condition as a customer-injuring requirement that Northwest now must import high-priced Wyoming gas. Northwest remains free not to import the gas at all.
 
 
 15
 The decision of the Commission is AFFIRMED.
 
 
 
 *
 The Honorable Thomas R. Brett, United States District Judge for the Northern District of Oklahoma, sitting by designation
 
 
 [4]
 Difficulty in recovering natural gas at reasonable prices would obviously not be such a circumstance."